1

2

3

4

5

6

7

8  IN THE UNITED STATES DISTRICT COURT

9  FOR THE EASTERN DISTRICT OF CALIFORNIA

10  THOMAS EUGENE MOORE,

11            Petitioner,            No. CIV S-02-0007 JAM DAD P

12     vs.

13  ROBERT HOREL, et al.,          <u>ORDER AND</u>

14          Respondents.      <u>FINDINGS AND RECOMMENDATIONS</u>

15  _____/

16        Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas

17  corpus pursuant to 28 U.S.C. § 2254.  The petition before the court challenges petitioner's

18  conviction in the Sacramento County Superior Court on one count of robbery in violation of

19  California Penal Code § 211.  Petitioner seeks federal habeas relief on numerous grounds,

20  including that: (1) he is actually innocent; (2) the trial court committed error during his trial; (3)

21  his trial counsel rendered ineffective assistance; (4) his appellate counsel rendered ineffective

22  assistance; (5) the trial court erred in imposing sentence; (6) his conviction was the result of juror

23  misconduct; (7) his conviction was the result of prosecutorial misconduct; and (8) the jury's

24  verdict was contrary to the evidence presented at trial.[1]

25  _____

26     [1] This list represents merely the broad categories of claims as petitioner has characterized them.  Petitioner's actual claims number in the dozens and will be addressed individually below.

1

1    Upon careful consideration of the record and the applicable law, the undersigned

2    will recommend that petitioner's application for habeas corpus relief be denied.

3                                PROCEDURAL BACKGROUND

4    On February 1, 2000, a jury found petitioner guilty of one count of robbery.

5    (Notice of Lodging Documents on January 14, 2010 (Doc. No. 139), Clerk's Transcript on

6    Appeal (CT) at 217.)  After this verdict was returned, petitioner requested a jury trial on the

7    sentencing enhancement allegations that had been brought against him.  (CT at 231.)  A short

8    time thereafter the jury also found allegations that petitioner had suffered three prior felony

9    convictions to be true.  (Id. at 227-29.)  Following his conviction, petitioner was sentenced on

10   January 22, 2001, to an indeterminate state prison term of twenty-five-years to life, plus a

11   determinate term of fifteen years, for an aggregate term of forty-years to life in prison.  (Id. at

12   610; Reporter's Transcript on Appeal (RT) at 635.)

13   Petitioner appealed his judgment of conviction to the California Court of Appeal

14   for the Third Appellate District.  On December 27, 2002, the judgment of conviction was

15   affirmed in a reasoned opinion.  (Resp't's Lod. Doc. 1.)  Petitioner then filed a petition for

16   review with the California Supreme Court.  (Resp't's Lod. Doc. 2.)  On March 3, 2003, the

17   California Supreme Court summarily denied that petition.  (Resp't's Lod. Doc. 3.)

18   Even before completion of proceedings on his direct appeal, petitioner began his

19   pursuit of collateral relief by filing a steady stream of state habeas petitions, totaling seventeen,

20   all of which were denied.  The first eight of those habeas petitions were denied prior to the

21   California Supreme Court's denial of review on petitioner's direct appeal.  On March 27, 2003,

22   petitioner signed his ninth state habeas petition for filing with the California Supreme Court.

23   That petition was filed on April 2, 2003 and denied on July 16, 2003.

24   As was the case with his pursuit of state habeas relief, petitioner began filing

25   habeas petitions in this court even before his direct appeal in state court was completed.  (See

26   Doc. Nos. 1, 3, 10 and 17.)  All of those petitions were ultimately dismissed after this court

1   struggled to determine both the nature of the conviction petitioner was attempting to collaterally

2   attack as well as the status of state court proceedings with respect to that conviction.  Finally, on

3   November 20, 2003, petitioner filed his fourth amended petition with this court which was the

4   first federal petition filed after the completion of his direct appeal in the state courts.  Petitioner

5   also sought a stay so that he could exhaust additional claims in state court that were not alleged

6   in the fourth amended petition.  On February 12, 2004, the undersigned recommended that a stay

7   and abeyance be granted (Doc. No. 30) and on March 30, 2004, this action was stayed and the

8   case was administratively closed while petitioner exhausted his state court remedies.  (Doc. No.

9   31.)  While the stay was in place, petitioner filed numerous state habeas petitions (see Resp't's

10  Mot. to Dismiss at 3-4) but made little progress with respect to exhausting any additional claims

11  in state court, apparently due in large part to his own piecemeal method of proceeding.  (See Doc.

12  Nos. 48, 57 and 61.)  Accordingly, on March 12, 2007, the undersigned recommended that the

13  stay in this action be lifted and the case re-opened.  (Doc. No. 61.)  However, the then-assigned

14  district judge did not adopt that recommendation until over a year later, on March 17, 2008.

15  (Doc. No. 76.)  On December 6, 2007, between the time the undersigned recommended the

16  lifting of the stay and the order re-opening the case was filed, petitioner filed his fifth amended

17  federal petition with this court.  (Doc. No. 70.)  Accordingly, on May 9, 2008, the court issued an

18  order deeming petitioner's fifth amended petition to be the operative pleading in this action and

19  directing respondent to respond thereto.  (Doc. No. 80.)

20        On May 19, 2008, petitioner filed yet another amended petition in this case, which

21  he referred to as his post-exhaustion amended petition, and on May 22, 2008, requested that the

22  court deem that petition the operative petition.  (See Doc. Nos. 83 and 89.)  On July 3, 2008, the

23  undersigned granted that request, deemed petitioner's sixth amended petition filed May 19, 2008,

24  to be the operative pleading in this action and directed respondent to file a response thereto.

25  (Doc. No. 96.)  On October 30, 2008, respondent moved to dismiss all or part of thirty-four of the

26  eighty-seven claims set forth in petitioner's sixth amended petition on the grounds that they were

1   time-barred, having not been submitted to this court within the applicable one-year statute of

2   limitations and not relating back to any claims timely presented to this court.  In opposing the

3   motion to dismiss (Doc. No. 113) petitioner also proposed further amendments to his habeas

4   petition, seeking leave to add still more claims.  (See Doc. Nos. 116-17 and 122.)

5               On August 17, 2009, the undersigned recommended that respondent's motion to

6   dismiss thirty-four specific claims set forth in the sixth amended petition be granted, that

7   petitioner's proposed amendments be construed as a motion for leave to amend, and that the

8   motion to amend be denied.  (See Doc. No. 127 at 11, 13.)  Those recommendations were

9   adopted in full on October 16, 2009 by the assigned district judge.  (Doc. No. 133.)  On January

10  14, 2010, respondent filed an answer.  (Doc. No. 138.)  Petitioner filed his traverse on May 21,

11  2010.  (Doc. No. 151.)

FACTUAL BACKGROUND

13              In its unpublished memorandum and opinion affirming petitioner's judgment of

14  conviction on appeal, the California Court of Appeal for the Third Appellate District provided

15  the following factual summary.

16              On January 25, 1999, Barry O'Sullivan was working as manager at
        the Rent-a-Center store on Florin Road.  About 6:45 p.m., he was
17      assisting a couple with a rental application when defendant entered
        and approached the counter.  Defendant had a scraggly beard and
18      was wearing a heavy long black coat with a hood.

19              Defendant pulled a dark stocking mask down over his face,
        brandished a length of pipe, pretending it was a gun, and demanded
20      money.  O'Sullivan initially refused. But after defendant repeated
        the demand, O'Sullivan put $870 in big bills into a brown paper
21      bag held by defendant.

22              When defendant fled east on Florin Road, O'Sullivan called out
        that he had been robbed, and dialed 911.  Assistant manager Rob
23      Hensley and two customers ran after defendant.

24              As Rent-a-Center employees Rick Dobbs and Rahman Aliy were
        returning to the store, Hensley told them of the robbery.

25
        Dobbs and Aliy drove down Florin Road looking for the robber
26      and the pursuers.  Dobbs stopped in front of a car dealership when

4

he observed a group of people, including one of the customers. After Aliy saw someone on the roof of the Pacific Bell building next to the car dealership, Aliy, a customer, and another man climbed to the roof and detained defendant.  One of the other men found most of the stolen money in defendant's sock. Aliy found a $20 bill in a brown paper bag a short distance away.[FN]

> FN[] At trial, Hensley and Aliy were unable to identify defendant as the robber, although Hensley testified that the man detained on the roof was the robber. Other witnesses at trial identified defendant as the man who robbed the store and was later caught on the roof.

Deputy Sheriff Randall Winn received a radio broadcast that a black male with a handgun, wearing a black coat and black mask, about 30 to 40 years old, had robbed the Rent-a-Center store. Winn later was told that a suspect had been detained.  Thereafter, he saw two men on the roof with defendant.

While interviewing O'Sullivan at the Rent-a-Center store, Deputy Sheriff Jason Manning received radio notification that a suspect had been detained.  Another deputy drove O'Sullivan to the Pacific Bell building, where O'Sullivan identified defendant as the robber.

After arresting defendant, Manning described him in the arrest report as wearing a dark gray double-breasted jacket or coat, a black knit beanie cap, a white button-up shirt and white tee shirt, and a green and maroon scarf.  However, defendant's booking photograph taken after midnight at the jail showed him wearing an orange sweater, also described in his personal property record at the sheriff's department.

(Resp't's Lod. Doc. 1 (hereinafter Opinion) at 2-3.)

## ANALYSIS

I.  Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

/////

1  corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

2  (1972).

3         This action is governed by the Antiterrorism and Effective Death Penalty Act of

4  1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

5  1062, 1067 (9th Cir. 2003).  Title 28 U.S.C. § 2254(d) sets forth the following standards for

6  granting habeas corpus relief:

7              An application for a writ of habeas corpus on behalf of a
             person in custody pursuant to the judgment of a State court shall
8             not be granted with respect to any claim that was adjudicated on
             the merits in State court proceedings unless the adjudication of the
9             claim -

10             (1) resulted in a decision that was contrary to, or involved
             an unreasonable application of, clearly established Federal law, as
11             determined by the Supreme Court of the United States; or

12             (2) resulted in a decision that was based on an unreasonable
             determination of the facts in light of the evidence presented in the
13             State court proceeding.

14  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362

15  (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).  If the state court's decision

16  does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review

17  of a habeas petitioner's claims.  Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008).  See

18  also Frantz v. Hazey, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that

19  we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such

20  error, we must decide the habeas petition by considering de novo the constitutional issues

21  raised.").

22         The court looks to the last reasoned state court decision as the basis for the state

23  court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  If the last reasoned

24  state court decision adopts or substantially incorporates the reasoning from a previous state court

25  decision, this court may consider both decisions to ascertain the reasoning of the last decision.

26  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  Where the state court

6

1   reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

2   habeas court independently reviews the record to determine whether habeas corpus relief is

3   available under § 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v.

4   Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  When it is clear that a state court has not reached

5   the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's

6   deferential standard does not apply and a federal habeas court must review the claim de novo.

7   Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

8   II.  Petitioner's Claims[2]

9       A.  Actual Innocence

10  _____Petitioner asserts that he is actually innocent of the robbery for which he was

11  convicted.  (Sixth Am. Pet. at 56.)  In support of this claim petitioner cites: (1) "newly

12  discovered" photographs/clothing evidence; (2) identification evidence; (3) fingerprint evidence;

13  (4) "newly discovered Brady evidence;" (5) "false" police reports; (6) "money evidence;" (7)

14  witness perjury; (8) an "erroneous prosecution theory;" (9) "erroneous jury instructions;" and

15  (10) a "newly discovered exculpatory witness."  (Id. at 56-63.)  After setting forth the applicable

16  legal standards, the court will evaluate these claims in turn below.

17  /////

18  _____

19      [2] Respondent asserts that review of "the majority of petitioner's claims" is procedurally
    barred, since they were rejected by the California Supreme Court as being "untimely."  (Answer
20  at 19.)  Respondent, however, also acknowledges that "given the relative complexity of
    procedural default and the lack of obvious merit of petitioner's claims, this court may proceed
21  directly to the claims raised in the petition."  (Id.)  State courts may decline to review a claim
    based on a procedural default.  Wainwright v. Sykes, 433 U.S. 72 (1977).  As a general rule, a
22  federal habeas court "'will not review a question of federal law decided by a state court if the
    decision of that court rests on a state law ground that is independent of the federal question and
23  adequate to support the judgment.'"  Calderon v. United States District Court (Bean), 96 F.3d
    1126, 1129 (9th Cir. 1996) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)).
24  However, a reviewing court need not invariably resolve the question of procedural default prior
    to ruling on the merits of a claim where the issue of procedural default turns on difficult
25  questions of state law.  Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997).  Under the
    circumstances presented here, this court finds that petitioner's claims can be resolved more easily
26  by addressing them on the merits.  Accordingly, the court will assume that petitioner's claims are
    not procedurally defaulted.

7

1          _____1.  Legal Standards

2          In Herrera v. Collins, 506 U.S. 390 (1993), a majority of the Supreme Court

3    assumed, without deciding, that a freestanding claim of actual innocence is cognizable under

4    federal law.  In this regard, the court observed that "in a capital case a truly persuasive

5    demonstration of 'actual innocence' made after trial would render the execution of a defendant

6    unconstitutional, and warrant federal habeas relief if there were no state avenue open to process

7    such a claim." Id at 417.  A different majority of the Supreme Court explicitly held that a

8    freestanding claim of actual innocence is cognizable in a federal habeas proceeding.  Compare

9    506 U.S. at 417 with 506 U.S. at 419 and 430-37.  See also Jackson v. Calderon, 211 F.3d 1148,

10   1165 (9th Cir. 2000) (noting that a majority of the Justices in Herrera would have found a free-

11   standing claim of actual innocence).  Although the Supreme Court did not specify the standard

12   applicable to this type of "innocence" claim, it noted that the threshold would be "extraordinarily

13   high" and that the showing would have to be "truly persuasive." Herrera, 506 U.S. at 417.  More

14   recently, the Supreme Court declined to resolve whether federal courts may entertain independent

15   claims of actual innocence but concluded that the petitioner's showing of innocence in the case

16   before it fell short of the threshold suggested in Herrera.  House v. Bell, 547 U.S. 518, 554-551

17   (2006).  Finally, the Supreme Court has recently once again assumed, without deciding, that a

18   federal constitutional right to be released upon proof of "actual innocence" exists.  District

19   Attorney's Office for Third Judicial Dist. v. Osborne, ___U.S.___, 129 S. Ct. 2308 (2009).  In

20   doing so, the Supreme Court noted that it is an "open question" whether a freestanding claim of

21   actual innocence exists and that the court has "struggled with it over the years, in some cases

22   assuming, arguendo, that it exists while also noting the difficult questions such a right would

23   pose and the high standard any claimant would have to meet." Id. at 2321.

24          The Ninth Circuit Court of Appeals has likewise assumed that freestanding

25   innocence claims are cognizable in both capital and non-capital cases and has also articulated a

26   minimum standard of proof in order for a habeas petitioner to prevail on such a claim.  Carriger

8

1    v. Stewart, 132 F.3d 463, 476 (9th Cir. 1997) (en banc).  Under that standard "[a] habeas

2    petitioner asserting a freestanding innocence claim must go beyond demonstrating doubt about

3    his guilt, and must affirmatively prove that he is probably innocent." Id. at 476-77.  See also

4    Jackson, 211 F.3d at 1165.  The petitioner's burden in such a case is "extraordinarily high" and

5    requires a showing that is "truly persuasive."  Carriger, 132 F.3d at 476 (quoting Herrera, 506

6    U.S. at 417).

7         Assuming arguendo that a freestanding claim of actual innocence may be

8    maintained in this non-capital case, for the reasons addressed below, petitioner has failed to make

9    the showing required to entitle him to federal habeas relief.

10          2.   Newly Discovered Photographs/Clothing

11         Petitioner claims that "new evidence" consisting of three photographs showing

12    him "wearing his orange red sweater" in October of 1998 "undisputedly proves that petitioner did

13    not change clothes with another person while being booked into the jail after his arrest," thereby

14    proving prove his innocence.  (Sixth Am. Pet. at 57.)

15         The Sacramento County Superior Court rejected this aspect of petitioner's actual

16    innocence claim in its August 22, 2006, order stating:

17           Petitioner claims that he is factually innocent and that newly
           discovered evidence of three photographs showing petitioner in an

18           orange/red sweater point to his innocence.  This issue was
           discovered around the time of the trial and was litigated in a

19           motion for a new trial.  Since it was not recently discovered, was
           raised in the trial court, should have been raised on appeal, and was

20           previously raised on habeas corpus, it will not be considered again.

21    (Resp't's Lod. Doc. No. 14 at 4.)

22         These photographs of petitioner wearing an orange/red sweater were indeed the

23    subject of a post-conviction motion for a new trial and petitioner's trial counsel possessed them

24    during petitioner's trial.  (RT at 582-95.)  Nevertheless, even if these photographs had only been

25    recently discovered and conclusively proved that the sweater petitioner was wearing in the

26    photographs was the same sweater he was wearing in his booking photo, petitioner still would

1  not have made a persuasive showing with respect to his actual innocence claim.

2          Petitioner was detained soon after the robbery and only a short distance from the

3  scene of the crime.   The exact amount of money stolen from the store was recovered from

4  petitioner's sock and in a small brown paper bag nearby.  Petitioner's physical description and

5  attire, when initially detained, matched that of the robbery suspect.  Most importantly, victim

6  O'Sullivan positively identified petitioner as the robber.

7          While the clothing petitioner was wearing during his booking photo apparently

8  did not match the clothing worn by the robber or the clothing worn by petitioner upon his initial

9  detention, there are plausible explanations for this discrepancy.  First, the sweater shown in the

10  pre-detention photograph now relied upon by petitioner may not have been the same sweater

11  petitioner was wearing in his booking photograph.  Moreover, petitioner may have simply

12  changed clothes prior to his booking, as was argued by the prosecution.  It is also plausible that

13  petitioner may have been wearing different clothes beneath his visible attire and simply removed

14  the outer wear he was detained in and surreptitiously disposed of those garments.  Regardless of

15  the explanation, the three photographs relied upon by petitioner obviously do not affirmatively

16  prove that he is probably innocent of the robbery for which he was convicted.

17          3. Identification Evidence

18          Petitioner next asserts that when O'Sullivan identified him as the robber, he was

19  "wearing his red sweater and brown pants and his head was bent down" out of O'Sullivan's

20  view.  (Sixth Am. Pet. at 59.)  The record, however, belies petitioner's claim in this regard, as

21  O'Sullivan testified at trial that he identified petitioner "by the face," was "100 percent positive"

22  petitioner was the person who "had just robbed" the store, and that there were no inconsistencies

23  between the clothing worn by the robber and those worn by petitioner, other than petitioner's

24  pants "were a little bit low."  (RT at 103.)  With respect to this aspect of his claim, petitioner has

25  not affirmatively proven that he is probably innocent of the robbery.

26  /////

10

### 4. Finger Print Evidence

Petitioner claims that a latent fingerprint was found on the small brown paper bag and that a fingerprint expert compared the latent print to petitioner's fingerprints and determined that the "print on the bag was not that of the petitioner." (Sixth Am. Pet. at 60.) Again, the record does not support petitioner's argument in this regard.

At petitioner's trial, a stipulation was read informing the jury that, if called to testify, a Sacramento Sheriff's Deputy Identification Technician would have testified that one fingerprint was found on the paper bag, but the "print was found to be of no comparison value" meaning "the identification of the person who left the print could not be identified." (RT at 356.) The jury was further advised that "a person could touch a bag and not leave fingerprints and that fingerprints could be smudged or obliterated by the touching of the bag by anyone." (Id.)

Petitioner has not affirmatively proven that he is probably innocent of the crime for which he was convicted based upon this fingerprint evidence.

### 5. Newly Discovered Brady[3] Evidence

Petitioner claims that after he was convicted he employed a paralegal who discovered that the true names of trial witnesses Rick Dobbs and Rahman Aliy were actually Ricky Leach and Dante Pigg, and that each had suffered prior felony convictions which were not disclosed to his trial counsel. (Sixth Am. Pet. at 60.) Petitioner also claims that prosecution witness Rob Hensley had an outstanding warrant for his arrest when he testified and that this fact was also not disclosed to the defense. (Id.) Petitioner argues that had such evidence been presented, no reasonable juror would have found him guilty. (Id.)

The Sacramento County Superior Court rejected this aspect of petitioner's actual innocence claim in its August 22, 2006, order stating:

/////

---

[3] Petitioner also raises a separate claim based on an alleged violation of Brady v. Maryland, 373 U.S. 83 (1963), which is discussed separately below.

Petitioner claims that he recently discovered exculpatory evidence, i.e., impeachment evidence relating to three prosecution witnesses. He claims that witness Rahman Aliy's alias was Dante Pigg and that Pigg had six felony convictions. Although the attached exhibits show at least one felony conviction for Pigg, there is no evidence that Pigg and Aliy were the same person. A declaration of Mary Victorian (Exhibit N) states that Victorian "obtain[ed] information that Mr. Dante M. Pigg is also known as Mr. Rahman Aliy and Aliy Rahman." There is no documentation to support this claim. Without that evidence, the conviction and arrest information for Dante Pigg is irrelevant. Similarly, petitioner's claim that witness Rick Dobbs has convictions under the alias of Ricky Leach is similarly unsupported. Finally, petitioner contends that witness Robert Hensley had an outstanding warrant at the time that he testified at petitioner's trial. The attached documents (Exhibits Q1-Q3) show that Hensley failed to appear on a citation for an infraction. However, this information could not have been used to impeach Hensley as a witness because trespassing is not a crime of moral turpitude. In addition, since all of this evidence could have been "discovered" before May 2003, the claims are untimely and are rejected in the absence of petitioner's failure to present them sooner.

(Resp't Lod. Doc. No. 14 at 4-5.)

In moving for a continuance of a post-conviction bail hearing, petitioner also alleged that Rahman Aliy had suffered several prior felony convictions . (See Reporter's Augmented Transcript on Appeal, Vol. 2 at 7-10.) As conceded by petitioner's counsel at that hearing, the "name Aliy Rahman is a Muslim name and it's very common in that religious practice to change your name." (Id. at 10.) The trial judge agreed, and noted the speculative nature of the name search, stating "it's like somebody that has two first names, two last names, Dan Bob, and you transpose them and call him Bob Dan." (Id.) In this regard, there is reason to doubt petitioner's assertion that witness Rahman Aliy is actually, Aliy Rahman or Dante Pigg, or that the witness Rahman Aliy had suffered any prior convictions. This court concludes that petitioner has failed to prove this contention.[4] Petitioner makes a similar argument as to the

---

[4] On May 15, 2008, petitioner filed a motion seeking that judicial notice be taken of some two hundred pages of documents, some of which related to this argument. (Doc. No. 84.) That motion was denied as not properly supported and those documents have therefore been disregarded by the court. (Doc. No. 95.)

1  identity of witness Rick Dobbs.  Again, however, petitioner has failed to prove that witness

2  Dobbs was in fact the Ricky Leach who had suffered a prior conviction.

3          While it does appear that Robert Hensley did have an outstanding warrant at the

4  time he testified at petitioner's, the state court's ruling that, under California law, the witness

5  could not have been impeached with that evidence appears to have been correct.

6          In any event, even assuming that petitioner's allegations with respect to Aliy and

7  Dodds were true, and he should have been allowed to impeach Aliy, Dodds and Hensley with all

8  the evidence he now claims he was denied access to, petitioner has failed to establish his actual

9  innocence of the robbery.  Indeed, the impeachment of these three witnesses would not have

10  altered the primary evidence of petitioner's guilt, specifically O'Sullivan's positive identification

11  of petitioner as the robber and petitioner's possession of the exact amount of stolen money at the

12  time of his apprehension.

13          With respect to this aspect of his actual innocence claim petitioner has not

14  affirmatively proven that he is probably innocent.

15                  6.  <u>False Police Report</u>

16          Petitioner next asserts that the various police reports were "false" because they

17  state that he was "wearing a dark coat, black pants, white t-shirt, white underwear, white socks,

18  and black tennis shoes . . . [b]ut the 3 photographs now prove that petitioner was in fact wearing

19  a red sweater, brown pants, white t-shirt, white underwear, white socks, sweatpants, and

20  sweatshirt when he was arrested."  (Sixth Am. Pet. at 61.)

21          Again, petitioner has not established that the three pre-detention photographs

22  prove that those were the clothes he was wearing at the time of his initial detention or that the

23  police reports were in fact false.  Petitioner merely asserts that the reports were false without

24  presenting any evidence supporting his conclusory argument.   Accordingly, with respect to this

25  aspect of his actual innocence claim petitioner has not affirmatively proven that he is probably

26  innocent.

### 7. Money Evidence

Petitioner claims that the "money that was allegedly stolen was fabricated by the officials and there was never any money, and the victim later fabricated the money by photocopying some money on the store's photocopier machine to be used as evidence of some money that was stolen in an alleged robbery."  (Id.)  Petitioner argues that the "absence and nonexistence of any allegedly stolen money is proof that there was no money actually found or even stolen, and proves that the petitioner is innocent."  (Id.)

Petitioner has provided this court with no evidence to support this claim. Petitioner's argument, on its face, is implausible.  He is essentially accusing the witnesses and the police officers of lying about the robbery and framing petitioner of the crime without any conceivable explanation as to why they would do so.  Regardless, with respect to this aspect of his actual innocence claim petitioner has not affirmatively proven that he is probably innocent.

### 8. Perjury

Petitioner next asserts that the three pre-detention photographs prove that numerous witnesses "perjured themselves before the jury," presumably because they testified that petitioner was not wearing the orange-red sweater when he was initially detained, thereby "proving the petitioner's innocence at trial."  (Id. at 62.)

Again, petitioner has provided this court with no evidence supporting a conclusion that any witness at his trial committed perjury.  For the reasons explained above, the three photographs relied upon by petitioner do not prove that the witnesses' descriptions of petitioner's attire were false.  With respect to this aspect of his actual innocence claim petitioner has not affirmatively proven that he is probably innocent.

### 9. Erroneous Prosecution Theory

In a similar vein, petitioner asserts that the three  photographs of him in an orange-red sweater prove that he did not switch clothes, as was argued by the prosecutor, thereby establishing that he "is actually innocent and not the actual suspect."  (Id.)  Petitioner argues that

1    his conviction was based "on this erroneous false prosecution theory."  (Id.)

2          As repeated above, however, the existence of the three photographs of petitioner

3    do not foreclose petitioner's guilt.  Petitioner has made no showing that the prosecutor knew of

4    the photographs upon which he now relies or that the prosecutor was prohibited from arguing to

5    the jury his theory that petitioner may have changed his clothes after his detention and prior to

6    the booking photo being taken.

7          With respect to this aspect of his actual innocence claim petitioner has once again

8    not affirmatively proven that he is probably innocent of the robbery for which he was convicted.

9          10.  Erroneous Jury Instruction

10          Again, petitioner argues that the three photographs prove that he is innocent and

11    therefore the use of CALJIC No. 2.06[5] at his trial, relating to a defendant's attempt to suppress

12    evidence was "erroneous."  (Id.)  The existence of these photographs, however, did not foreclose

13    the possibility that petitioner altered his attire after his detention in an attempt to conceal

14    evidence of his guilt.  Nor has petitioner shown that he presented these photographs to the trial

15    court prior to the instruction of the jury so that the court could evaluate the instruction in light of

16    the photographs.  Moreover, the giving of a jury instruction does not directly relate to petitioner's

17    actual innocence.

18          With respect to this aspect of his actual innocence claim petitioner has not

19    presented any evidence affirmatively proving that he is probably innocent.

20    /////

21

22       [5] CALJIC No. 2.06 as read to the jury in this case provided:

23

24       If you find that a defendant attempted to suppress evidence against [himself] in
any manner, such as by concealing evidence by changing clothes, this attempt may

25    be considered by you as a circumstance tending to show a consciousness of guilt.
However, this conduct is not sufficient by itself to prove guilt, and its weight and

26    significance, if any, are for you to decide.

(CT at 165.)

11. <u>Newly Discovered Exculpatory Witness</u>

Finally, petitioner claims that after he was convicted he located an additional witness to the robbery, a Ms. Barksdale, who described the robbery suspect as "a tall person 5'10" or taller like her boyfriend." (<u>Id.</u> at 63.) Petitioner apparently was closer in height to 5'7". (Reporter's Augmented Transcript on Appeal, Vol. 2 at 11.)

The Sacramento County Superior Court rejected this claim on August 22, 2006, finding that the evidence offered by petitioner was not "newly discovered" because the written report of the interview of Barksdale was dated April 2001. (Resp't's Lod. Doc. No. 14 at 4-5.)

The question of petitioner's height versus that of the robbery suspect's was raised at petitioner's trial. O'Sullivan testified that he described the robbery suspect's height to the 911 operator as "five-ten or five-eleven," the same height as O'Sullivan. (RT at 177.) The prosecutor then had petitioner stand up in front of the counsel table so that O'Sullivan could evaluate petitioner's height as part of O'Sullivan's identification. (<u>Id.</u> at 154.) O'Sullivan admitted that petitioner appeared to be a little shorter than O'Sullivan but he was "definitely the gentleman who robbed me that night." (<u>Id.</u> at 155.)

Barksdale's statement that the robbery suspect was "as tall or taller" than her boyfriend does not prove petitioner's innocence. Any minor discrepancy between Barksdale's estimation of the suspect's height, based on her brief viewing, and that of O'Sullivan, as part of his positive identification of petitioner as the robber, certainly does not support petitioner's claim of actual innocence.

Thus, with respect to this aspect of his actual innocence claim petitioner has not affirmatively proven that he is probably innocent.

B. <u>False Reports</u>

Petitioner again asserts, in a claim separate from his actual innocence claim, that the police reports produced as part of the investigation in this case were falsified because the officers "falsely listed and reported" that petitioner was wearing a dark coat and not the orange-

16

1   red sweater he claims he was wearing prior to the robbery.  (Sixth Am. Pet. at 81-84.)  Petitioner

2   also claims that the officers interviewed a white male customer who informed them that

3   petitioner was the "wrong person" but that the officers "purposely did not" record the name or

4   contact information for that witnesses.  (Id. at 175.)

5          For the same reasons discussed above, petitioner has failed to offer any evidence

6   establishing that the reports by the police officers were false.  While petitioner contends that he

7   was wearing an orange-red sweater at the time he was detained, he has presented no evidence to

8   support that assertion nor any evidence discrediting the police reports or witness statements to

9   the contrary.  Similarly there is no evidence before the court to support petitioner's assertion that

10  a white male customer of the Rent-a-Center store indicated that petitioner was not the robber or

11  that the police purposefully suppressed or lost that person's identity and contact information.

12         Accordingly, petitioner is not entitled to federal habeas relief with respect to his

13  claim that his conviction was unconstitutionally obtained due to the falsity of police reports

14  prepared as part of the investigation.

15      C.  Trial Court Error

16         Petitioner raises fourteen different challenges to actions taken by the trial court.[6]

17  Specifically he claims that the trial judge erred: (1) by improperly instructing the jury; (2) by

18  denying his Marsden motion; (3) by allowing reference at trial to petitioner's prior booking; (4)

19  in announcing closing arguments; (5) by effectively improperly testifying; (6) by allowing the

20  filing of the first amended information; (7) in denying petitioner's motion for a new trial; (8) by

21  allowing petitioner to go unrepresented at sentencing; (9) by violating petitioner's right to

22  advisory counsel; (10) by allowing an untimely prior conviction allegation to be brought against

23  petitioner; (11) by improperly admitting evidence at trial; (12) by denying petitioner's motion to

24  dismiss; (13) by substituting judges; and (14) by failing to vacate petitioner's judgment and

25

26      [6] Petitioner raises three separate claims of jury instruction error.  Those claims have been
    consolidated below and analyzed as a single claim.

sentence.  The court will evaluate each of these claims in turn below.

## 1. Improperly Instructing The Jury

Petitioner claims that the trial court improperly instructed the jury with CALJIC No. 2.06.  In this regard, petitioner again argues that the prosecutor "falsified facts" by using the "inapplicable theory" that petitioner changed his clothes after his detention and prior to his booking photo being taken.  (Sixth Am. Pet. at 91.)  Petitioner argues that the trial court's use of the challenged instruction was "not supported by the evidence."  (Id. at 92.)  Petitioner also claims the trial court erred by issuing jury instructions consistent with CALJIC No. 17.41.1, 2.90, and 1.00.  (Id. at 220-27.)

The California Court of Appeal specifically rejected petitioner's challenges to the jury instructions given at his trial.  The court reasoned as follows:

> Over defendant's objection, the trial court instructed the jurors with CALJIC No. 2.06 as follows: "If you find that the defendant attempted to suppress evidence against himself in any manner such as by concealing evidence by changing clothes, this attempt may be considered by you as a circumstance tending to show a consciousness of guilt.  However, this conduct is not sufficient by itself to prove guilt, and its weight and significance, if any, are for you to decide."

> Defendant contends this instruction should not have been given because it was "based upon a non-existent fact."  According to defendant, he was handcuffed and detained from the moment of his arrest and there was no evidence presented that he "had some Houdini-like ability to change clothes while shackled."  We are not persuaded.

> The trial court has a duty to instruct on principles of law closely and openly connected with the facts of the case.  (People v. St. Martin (1970) 1 Cal.3d 524, 531.)  CALJIC 2.06 informs jurors of two principles of law, one beneficial to the prosecution, the other beneficial to the defense: (1) consciousness of guilt may be inferred from a defendant's attempt to suppress evidence in any manner, such as concealing it; but (2) such suspicious conduct is not sufficient by itself to prove guilt.  However, "before a jury can be instructed that it may draw a particular inference, evidence must appear in the record which, if believed by the jury, will support the suggested inference."  (People v. Hannon (1977) 19 Cal.3d 588, 597.)

/////

18

As the trial court noted, the jury was presented with evidence that defendant was wearing an orange sweater when he was booked into the county jail, but that he was wearing a long heavy dark double-breasted coat, a white shirt, and white tee shirt when he was arrested.  This evidence supported two different inferences: (1) defendant was not the robber, and the police lied about the clothing defendant was wearing at the time of his arrest; or (2) the arresting officer overlooked or forgot to document the sweater that defendant was wearing under his overcoat, and defendant discarded the incriminating outer clothing between the time of his arrest and the time he was booked.  This latter inference supported the giving of the modified version of CALJIC No. 2.06.

In defendant's view, the latter inference cannot be drawn from the evidence because he necessarily was handcuffed from the time of his arrest until he was booked into jail and, thus, without the powers of Houdini, he could not have discarded the outer clothing he purportedly was wearing.  However, other than the booking photograph, neither the prosecution nor the defense introduced evidence regarding defendant's transportation to, and booking into, the jail. We cannot conclude, as a matter of law, that defendant necessarily was handcuffed the entire time after he arrived for booking and there was no opportunity for him to discard the outer clothing.

### III

Defendant's asserts that his trial attorney's failure to introduce the photographs of defendant wearing an orange sweater and the giving of CALJIC No. 2.06 resulted in cumulative error that deprived him of a fair trial.  Because there was no error (see parts I and II of this opinion, *ante*), there was no cumulative error.

### IV

The trial court instructed with CALJIC No. 1.00.  Defendant challenges that portion of the instruction that told the jurors: "You must not be influenced by pity for or prejudice against a defendant. You must not be biased against a defendant because he has been arrested for this offense, charged with a crime, or brought to trial. None of these circumstances is evidence of guilt and you must not infer or assume from any or all of them that a defendant is *more likely to be guilty than not guilty*."  (Italics added.)

According to defendant, this language impermissibly lessened the People's burden to prove defendant guilty beyond a reasonable doubt.  The contention fails for the reasons stated in People v. Wade (1995) 39 Cal.App.4th 1487, 1494-1496 (hereafter Wade).  Defendant provides no convincing reason for us to reconsider or distinguish the decision in Wade.  He suggests that a change in the reasonable doubt instruction, CALJIC No. 2.90, makes this case

different.  But the revised language of CALJIC No. 2.90 is not connected in any way to the purported effect of the challenged language in CALJIC No. 1.00.[FN]

> FN[]. At the time of trial in <u>Wade</u>, CALJIC No. 2.90 included the following language regarding reasonable doubt: "It is that state of the case, which, after the entire comparison and consideration of all the evidence leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction *to a moral certainty* of the truth of the charge."  (Italics added.) Here, the trial court gave the current version of CALJIC No. 2.90, which eliminates the words italicized above.

## V

Defendant also attacks the revised CALJIC No. 2.90.  Arguing that the "notion of 'abiding conviction' is too easily confused with the 'clear and convincing' evidentiary standard," defendant claims the instruction "fails to convey to the jury the degree of certainty necessary to establish proof beyond a reasonable doubt."  He ignores case law that has rejected this contention as frivolous.  (<u>People v. Hearon</u> (1999) 72 Cal.App.4th 1285, 1286-1287, and cases cited therein; see <u>Victor v. Nebraska</u> (1994) 511 U.S. 1, 11; <u>People v. Freeman</u> (1994) 8 Cal.4th 450, 504-505.)

## VI

In supplemental briefing, defendant contends the giving of CALJIC 17.41.1 violated his federal right to due process of law.  The contention fails for the reasons stated by the California Supreme Court in <u>People v. Engelman</u> (2002) 28 Cal.4th 436, 439-440, 442-445.)

(Opinion at 7-11.)

A challenge to jury instructions does not generally state a federal constitutional claim.  <u>See</u> <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)).  Habeas corpus is unavailable for alleged error in the interpretation or application of state law.  <u>Middleton</u>, 768 F.2d at 1085; <u>Givens v. Housewright</u>, 786 F.2d 1378, 1381 (9th Cir. 1986).  However, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its

impact so infects the entire trial that the resulting conviction violates the defendant's right to due process." <u>Hines v. Enomoto</u>, 658 F.2d 667, 672 (9th Cir. 1981) (citing <u>Quigg v. Crist</u>, 616 F.2d 1107 (9th Cir. 1980)).  <u>See also</u> <u>Prantil v. California</u>, 843 F.2d 314, 317 (9th Cir. 1988) (To prevail on such a claim petitioner must demonstrate that an erroneous instruction "so infected the entire trial that the resulting conviction violates due process.").  The analysis for determining whether a trial is "so infected with unfairness" as to rise to the level of a due process violation is similar to the analysis used in determining, under <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993), whether an error had "a substantial and injurious effect" on the outcome.  <u>See</u> <u>McKinney v. Rees</u>, 993 F.2d 1378, 1385 (9th Cir. 1993).

Here, petitioner's claim with respect to CALJIC No. 2.06, is meritless.  His central defense at trial was based on the disparity between the clothes the robbery suspect was described as wearing and those petitioner was wearing in his booking photo.  The prosecution countered that defense by providing testimony from various witnesses that petitioner's clothing at the time of his initial detention immediately after the robbery was similar to that of the robbery suspect's and dissimilar to those seen in his booking photo.  The state appellate court found that, in light of this evidence introduced at trial, it was proper under state law for the trial court to instruct the jury with  CALJIC No. 2.06 and that petitioner had not established that doing so infected the entire trial with unfairness.

With respect to CALJIC No. 17.41.1 and No. 1.00, petitioner's challenge to these instructions is foreclosed by the decision of the Ninth Circuit Court of Appeals in <u>Brewer v. Hall</u>, 378 F.3d 952, 955-57 (9th Cir. 2004).  In <u>Brewer</u>, the court held that, regardless of the "constitutional merits" of CALJIC No. 17.41.1, federal habeas corpus relief was unavailable with respect to a challenge to that jury instruction because there is "no Supreme Court precedent clearly establishing" that its use violates a defendant's constitutional rights.  378 F.3d at 955-56. Here, as in <u>Brewer</u>, petitioner "has pointed to no Supreme Court precedent clearly establishing that CALJIC 17.41.1- either on its face or as applied to the facts of his case -violated his

1    constitutional rights." Id. at 957.  Nor has petitioner pointed to any precedent clearly establishing

2    that CALJIC 1.00 - either on its face or as applied to the facts of his case-violated his

3    constitutional rights.  Thus, the state appellate court's rejection of this aspect of petitioner's jury

4    instruction challenge was not contrary to or an unreasonable application of clearly established

5    federal law.  Moreover, even if the state trial court erred in providing the jury at petitioner's trial

6    with these two instructions, the error was harmless under the circumstances of this case.  See

7    Brecht, 507 U.S. at 623 (holding that a federal court may not grant habeas relief for trial errors

8    without a showing of actual prejudice, defined as a "substantial and injurious effect or influence

9    in determining the jury's verdict").  There is no evidence before this court suggesting that the

10   giving of these instructions chilled the jurors' exercise of free speech, prevented free and full

11   deliberations, or allowed for petitioner's conviction on proof less than beyond a reasonable

12   doubt.

13           Similarly, petitioner's challenge to CALJIC No. 2.90, is foreclosed.  The Ninth

14   Circuit Court of Appeals has specifically upheld the constitutionality of the version of CALJIC

15   No. 2.90 with which petitioner's jury was instructed.  See Lisenbee v. Henry, 166 F.3d 997, 999-

16   1000 (9th Cir. 1999) (holding that the post-1994 version of CALJIC No. 2.90 adequately

17   describes the reasonable doubt standard).

18           For the reasons stated above, petitioner is not entitled to federal habeas relief on

19   this aspect of his claim of jury instruction error by the trial court.

20           2. Marsden Motion

21           Petitioner claims the trial court erred in denying his motion to relieve his trial

22   counsel pursuant to the decision in People v. Marsden, 2 Cal.3d 118 (Cal. 1970).  Specifically

23   petitioner argues that he had a "built-in conflict of interest" with his trial counsel because she

24   was employed by the Sacramento County Public Defender's Office and petitioner had previously

25   worked for that office from April of 1979 until September of 1982 when he was fired.  (Sixth

26   Am. Pet. at 120, 135-42.)  Additionally, petitioner claims that at the time of his trial the

                                             22

1    Sacramento County Public Defender's Office also represented witness Rahman Aliy.  This latter

2    allegation is based on petitioner's belief that Aliy was really Dante Pigg.  Petitioner asserts that

3    as a result of the trial court's error in denying his <u>Marsden</u> motion, he was "forced to represent

4    himself in order to discontinue the conflict of interest."  (<u>Id.</u> at 135, 143.)

5              A defendant has a Sixth Amendment right to conflict-free representation.  <u>United</u>

6    <u>States v. Moore</u>, 159 F.3d 1154, 1157 (9th Cir. 1998).  Not every conflict between a defendant

7    and counsel, however, implicates the Sixth Amendment.  <u>See</u> <u>Schell v. Witek</u>, 218 F.3d 1017,

8    1027 (9th Cir. 2000).  As the Supreme Court has explained, the right to counsel does not

9    guarantee "a right to counsel with whom the accused has a 'meaningful attorney-client

10   relationship.' "  <u>Morris v. Slappy</u>, 461 U.S. 1, 3-4 (1983).  Nevertheless, where a court

11   "compel[s] one charged with [a] grievous crime to undergo a trial with the assistance of an

12   attorney with whom he has become embroiled in [an] irreconcilable conflict [it] deprive[s] him

13   of the effective assistance of any counsel whatsoever."  <u>Brown v. Craven</u>, 424 F.2d 1166, 1170

14   (9th Cir.1970).  Thus, a reviewing court must assess the nature and extent of the conflict and

15   whether that conflict deprived the defendant of representation guaranteed by the Sixth

16   Amendment.  <u>Schell</u>, 218 F.3d at 1027.

17             As noted above, petitioner has failed to present this court with any evidence

18   demonstrating that Rahman Aliy was in fact Dante Pigg.  Therefore, petitioner has failed to show

19   any conflict of interest on the part of his trial counsel based on the Public Defender's

20   representation of Pigg.  Petitioner has also failed to demonstrate any actual conflict of interest

21   based on his former employment by the Public Defender's Office.  Petitioner's employment

22   ended some seventeen years before his representation by a deputy public defender in this case

23   began.  Even if the office continued to employee individuals petitioner had previously worked

24   with, petitioner has not pointed to any evidence of a conflict involving his appointed trial

25   counsel.  Furthermore, petitioner has failed to prove any deleterious effects stemming from the

26   conflict he now alleges.

1    Accordingly, petitioner is not entitled to federal habeas relief with respect to this

2  aspect of his claim of error by the trial court.

3    3.  Prior Booking

4    Petitioner next claims that the trial court failed to admonish the jury at his trial to

5  disregard testimony by Officer Manning that information about petitioner's weight may have

6  been obtained from "prior booking information," thus indicating to the jury that petitioner had

7  previously been arrested.  (Sixth Am. Pet. at 145.)  Petitioner argues that because the trial court

8  failed to "admonish the jury to disregard" Officer Manning's statement, "the court should have

9  declared a mistrial."  (Id. at 146.)

10    After Officer Manning testified that he may have gotten petitioner's weight from

11  "prior booking information" the prosecutor moved to strike the answer.  (RT at 254.)  The

12  defense did not object and the court ordered the answer stricken.  (Id. at 255.)  The testimony in

13  question was stricken from the record, meaning the jury could not consider it as evidence. The

14  jury was so instructed (CT at 160) and is presumed to have obeyed the court's instructions.

15  Zafiro v. United States, 506 U.S. 534, 540 (1993); Taylor v. Sisto, ___F.3d___, 2010 WL

16  2039172, at *4 (9th Cir. May 25, 2010).  Moreover, this reference to petitioner's prior booking

17  information was brief and, at worst, merely indicated that petitioner had a prior encounter with

18  law enforcement.  There was no discussion of the nature of that encounter, its resolution, or

19  petitioner's criminal history.  The fleeting reference by Officer Manning was thus harmless.

20    Accordingly, petitioner is not entitled to federal habeas relief on this aspect of his

21  claim of  trial court error.

22    4.  Closing Arguments

23    Petitioner claims that the trial court erred by informing the jury that after the

24  presentation of evidence had ended and both sides had rested, there would be "opening

25  arguments."  (Sixth Am. Pet. at 146.)  Petitioner asserts in conclusory fashion that the court's

26  misstatement by reference to "opening" as opposed to "closing" arguments confused the jury and

24

1 "[t]herefore this case should be reversed." (<u>Id.</u> at 147.)

2      Petitioner cites no federal or state law in support of his conclusory argument. He

3 has failed to state a cognizable claim for federal habeas relief in this regard.

4           5. <u>Improperly Testifying</u>

5      Petitioner argues that the trial judge improperly "testified to the jury." (<u>Id.</u> at

6 148.) In this regard, petitioner claims that during deliberations the jury sent a note asking "where

7 is the money." (<u>Id.</u>) According to petitioner, the trial judge "testified to the jury and stated,

8 'there is no money.' " (<u>Id.</u>) Petitioner claims the jury should have instead been informed that the

9 judge could not answer the question and that by instead answering in this manner, petitioner's

10 right to a fair trial was violated. (<u>Id.</u>)

11      Again, petitioner cites no federal or state law in support of this conclusory

12 argument and has therefore failed to state a cognizable claim for federal habeas relief in this

13 regard.

14           6. <u>First Amended Information</u>

15      Petitioner next asserts that the trial court erred by allowing the prosecutor to file a

16 "First Amended Information," which included new sentencing enhancements, after the trial had

17 commenced. (<u>Id.</u> at 149.) Petitioner also argues that one of the sentencing enhancements alleged

18 was based on a 1987 conviction that the trial court should not have allowed because petitioner

19 was "misadvised concerning the plea bargain" in connection with that conviction. (<u>Id.</u> at 150.)

20      As a general rule, if a prior conviction used to enhance a state sentence is fully

21 expired in its own right, the defendant may not collaterally attack that prior conviction through a

22 § 2254 petition. <u>Lackawanna v. Coss</u>, 532 U.S. 394, 403-04 (2001); <u>Daniels v. United States</u>,

23 532 U.S. 374, 383 (2001); <u>Gill v. Ayers</u>, 342 F.3d 911, 919 n. 7 (9th Cir. 2003). Here

24 petitioner's 1987 conviction was fully expired at the time of his trial in February of 2000.

25      Moreover, as with his two previous claims, petitioner cites no federal or state law

26 in support of his argument that he is entitled to habeas relief in this regard. A federal writ is not

1    available for alleged error in the interpretation or application of state law.  See Estelle v.

2    McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000)

3    Thus, "[a]bsent a showing of fundamental unfairness, a state court's misapplication of its own

4    sentencing laws does not justify federal habeas relief."  Christian v. Rhode, 41 F.3d 461, 469 (9th

5    Cir. 1994).  Petitioner has not made "a showing of fundamental unfairness" and is therefore not

6    entitled to federal habeas relief on this aspect of his claim of trial court error.

7                    7.  New Trial Motion

8              Petitioner argues that the trial court erred in denying his motion for a new trial

9    based on the "three newly discovered photographs," depriving him of "an opportunity to prove

10   his innocence" with those pictures.  (Sixth Am. Pet. at 151.)

11             Again, petitioner cites no federal or state authority in support of his claim.  As

12   discussed thoroughly above, the photographs to which petitioner refers were not newly

13   discovered evidence.  Petitioner's trial counsel was aware of them during petitioner's trial.

14   Moreover, contrary to petitioner's repeated assertion, the photographs do not prove that he is

15   innocent of the crime for which he was convicted and thus do not support the granting of federal

16   habeas relief.

17                   8.  Representation at Sentencing

18             Petitioner claims the trial court threatened to force him to proceed pro per during

19   his January 19, 2001 sentencing hearing if he relieved his counsel.  (Id. at 154.)  Petitioner asserts

20   that this "scared" him and he was essentially "forced and compelled" to allow his counsel to

21   represent him against his will, despite the existence of a conflict of interest.  (Id.)

22             The record before this court belies petitioner's claim.  At the January 19, 2001,

23   sentencing hearing petitioner was represented by newly retained counsel and not by appointed

24   counsel.  (RT at 602.)  At the beginning of that hearing, when petitioner's retained counsel was

25   arguing that the court should strike petitioner's prior convictions for purpose of sentencing,

26   petitioner interjected that he would like to make a motion to relieve his trial counsel pursuant to

                                          26

1  the decision in People v. Marsden.  (Id. at 601.)  The trial court informed petitioner that a

2  "Marsden hearing is only appropriate if you have an appointed lawyer" and that, while petitioner

3  was free to "fire" his retained lawyer, in light of the length of time the case had taken and the

4  number of attorneys who had already been involved on petitioner's behalf, if petitioner elected to

5  relieve his counsel, the court would nonetheless proceed with the hearing.  (Id. at 602.)

6  Petitioner then consulted with his retained counsel, who thereafter stated to the court that

7  petitioner "indicated he wants me to represent him at this hearing."  (Id. at 603.)

8          Petitioner was never forced to do anything and was in fact represented at his

9  sentencing hearing by counsel of his own choosing.  Petitioner therefore is not entitled to federal

10  habeas relief on this aspect of his claim of trial court error.

11                  9.  Right to Advisory Counsel

12          Petitioner next asserts that the trial court erred when it failed to "appoint advisory

13  counsel as requested by the petitioner."  (Sixth Am. Pet. at 176.)  Petitioner claims that because

14  he was taking psychotropic medication, "as well as having other mental problems and

15  complications," he had the right to advisory counsel.  (Id.)

16          The record reflects that on February 3, 1999, petitioner first requested to substitute

17  his counsel.  (RT Chronological Index, Vol. 1 at 1; CT at 1.)  The court conducted a hearing and

18  denied petitioner's request without prejudice.  (RT at 1-5; CT at 1.)  Petitioner again requested

19  substitution of counsel on April 16, 1999.  (RT Chronological Index, Vol. 1 at 1; CT at 2.)  The

20  court again conducted a hearing and denied petitioner's motion.  (RT at 1-5, 7-19.)  After the

21  court denied petitioner's motion to relieve his counsel, petitioner made a motion to proceed pro

22  per.  (RT at 20.)  The trial court advised petitioner that a ruling on that motion would be delayed

23  until April 26, 1999, so that petitioner could give some "long thought" to the decision because,

24  while he had "a constitutional right to represent yourself" the court "could not imagine a

25  circumstance where [petitioner was] better off without a lawyer than with a lawyer."  (Id. at 20-

26  21.)  The court noted that petitioner's trial counsel "lets you participate in the case" and that

27

while there were "a number of calls that [his] attorney makes" they are "always made . . . with consultation with the defendant." (Id. at 21.)  The judge advised petitioner that it was his opinion that "you are always better off with an attorney."  (Id.)  The judge also stated, however, that if on April 26, 1999, petitioner still wanted to represent himself, "we'll do it on the 26th."  (Id.)  On April 26, 1999, petitioner's motion to represent himself was granted.  (CT at 2.)  On April 30, 1999, petitioner then requested the appointment of advisory counsel.  (Id. at 3.)  That motion was denied.  Finally,  on June 4, 1999, petitioner withdrew his request to represent himself and was again appointed an attorney.  (Id. at 4.)

Once again, petitioner has cited no authority in support of his argument that his constitutional rights were violated when the trial court denied his request for the appointment of advisory counsel.  See United States v. Halbert, 640 F.2d 1000, 1009 (9th Cir. 1981) (recognizing that no constitutional right to advisory counsel or hybrid representation exists for a criminal defendant who elects to represent himself).  Petitioner has therefore failed to state a cognizable claim for federal habeas relief.

10.  Untimely Prior Conviction Allegation

Petitioner claims that because the prosecutor "filed the amended information in a late and untimely manner alleging petitioner's 1994 prior conviction . . . the prosecution should not have used the petitioner's 1994 prior conviction."  (Sixth Am. Pet. at 176.)

As with many of the claims addressed above, petitioner fails to cite any authority in support of his argument that he is entitled to habeas relief in this regard.  Moreover, the record again belies petitioner's claim.  The original complaint filed against him in state court alleged that he had three prior felony convictions, including the 1994 robbery conviction he challenges here.  (CT at 15-16.)

Petitioner, therefore, is not entitled to federal habeas relief on this aspect of his claim of trial court error.

/////

28

1    11.  <u>Improperly Admitting Evidence</u>

2         Petitioner argues that the trial court improperly denied his trial counsel's motion

3    to exclude "the fabricated photocopied monetary evidence and to exclude the victim/witness

4    O'Sullivan's in-field tainted identification" from evidence at his trial.  (Sixth Am. Pet. at 177.)

5    Petitioner claims that "the monetary evidence was tainted by being lost and then some money

6    was photocopied."  (<u>Id.</u>)  Petitioner also claims that the in-field identification was "tainted"

7    because petitioner was "naked with his pants down on his ankles" and was facing the ground at

8    the time the identification was allegedly made.

9         A state court's evidentiary ruling is not subject to federal habeas review unless the

10   ruling violates federal law, either by infringing upon a specific federal constitutional or statutory

11   provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process.

12   <u>See</u> <u>Pulley v. Harris</u>, 465 U.S. 37, 41 (1984); <u>Jammal v. Van de Kamp</u>, 926 F.2d 918, 919-20

13   (9th Cir. 1991).  Accordingly, a federal court cannot disturb a state court's decision to admit

14   evidence on due process grounds unless the admission of the evidence was "arbitrary or so

15   prejudicial that it rendered the trial fundamentally unfair."  <u>Walters v. Maass</u>, 45 F.3d 1355, 1357

16   (9th Cir. 1995).  <u>See</u> <u>also</u> <u>Colley v. Sumner</u>, 784 F.2d 984, 990 (9th Cir. 1986).  In addition, in

17   order to obtain habeas relief on the basis of evidentiary error, petitioner must show that the error

18   was one of constitutional dimension and that it was not harmless under <u>Brecht v. Abrahamson</u>,

19   507 U.S. 619 (1993).  Thus, in order to grant relief, the habeas court must find that the error had

20   "'a substantial and injurious effect' on the verdict." <u>Dillard v. Roe</u>, 244 F.3d 758, 767 n. 7 (9th

21   Cir. 2001) (quoting <u>Brecht</u>, 507 U.S. at 623).

22         Petitioner's trial was not rendered fundamentally unfair because of the admission

23   of the evidence regarding the photocopied stolen money or the in-field identification of petitioner

24   as the robber.  Petitioner has provided no support for his conclusory claim that the photocopies of

25   the stolen money were "fabricated."  Moreover, as discussed above, witness O'Sullivan's trial

26   testimony refutes petitioner's claim that he was "facing the ground" at the time of the

1    identification, since O'Sullivan identified petitioner "by the face." (RT at 103.)

2         Petitioner therefore is not entitled to federal habeas relief on this aspect of his

3    claim of error by the trial court.

4         12.  Motion to Dismiss

5         Petitioner asserts that the trial court improperly denied his trial counsel's motion

6    to dismiss the charge against petitioner due to the "failure of the officials to collect the

7    exculpatory evidence of the eyewitness who was a witness of the robbery . . . and who witnessed

8    the employees and customer accost and detain the petitioner and who informed the employees,

9    customer as well as the officials that the petitioner was not the suspect." (Sixth Am. Pet. at 178.)

10        The failure to preserve exculpatory evidence violates a defendant's right to due

11   process only if the unavailable evidence possessed "exculpatory value that was apparent before

12   the evidence was destroyed, and [is] of such a nature that the defendant would be unable to

13   obtain comparable evidence by other reasonably available means." California v. Trombetta, 467

14   U.S. 479, 489 (1984). See also Cooper v. Calderon, 255 F.3d 1104, 1113 (9th Cir. 2001). A

15   defendant must also demonstrate that the police acted in bad faith in failing to preserve

16   potentially useful evidence. Arizona v. Youngblood, 488 U.S. 51, 58 (1988); Cooper, 255 F.3d

17   at 1113; see also Guam v. Muna, 999 F.2d 397, 400 (9th Cir. 1993). The presence or absence of

18   bad faith turns on the government's knowledge of the apparent exculpatory value of the evidence

19   at the time it was lost or destroyed. Youngblood, 488 U.S. at 56-57 n. *; see also United States

20   v. Cooper, 983 F.2d 928, 931 (9th Cir. 1993).

21        After the robbery, petitioner was chased by two customers of the robbed store, an

22   African-American male and a white male, among others. (RT at 309.) Neither of those

23   customers testified at petitioner's trial. While, petitioner claims in conclusory fashion that the

24   white customer informed others that "petitioner was not the suspect," he has provided no

25   evidence to support that assertion. Indeed, witness Rick Dobbs testified at petitioner's trial that

26   the white male customer never indicated petitioner was not the robbery suspect. (Id. at 222.)

1   There is therefore no evidence before this court that the unidentified white male could have

2   provided exculpatory evidence at petitioner's trial, let alone any evidence that the police acted in

3   bad faith in failing to preserve any such evidence.  Moreover, there is no evidence that the trial

4   court's decision to deny petitioner's motion for a new trial based on the failure to obtain or

5   preserve the identity of the white male customer violated petitioner's constitutional rights.

6          Accordingly, petitioner is not entitled to federal habeas relief on this aspect of his

7   claim of trial court error.

8              13.  Substituting Judges

9          Petitioner next claims that a "substitute stand in judge" improperly presided over

10  the hearing on his motion for bail pending appeal, in violation of "rights to the 4th, 5th, 6th, and

11  14th Amendments."  (Sixth Am. Pet. at 182.)  Petitioner also asserts that the prosecutor stated

12  "that he never had seen such substitute judges make such judgments and that he believed that the

13  trial judge should make such judgments."  (Id.)

14         Petitioner makes no argument that the "substitute stand in judge" erred in any way

15  in connection with his motion for bail pending appeal.  Also, noticeably absent from petitioner's

16  claim is a citation to any authority supporting his claim of entitlement to habeas relief on this

17  basis.  This court is unaware of any applicable federal authority requiring that the same state trial

18  judge that presided over a defendant's trial must preside over any post-conviction motion for bail

19  pending appeal.  Petitioner therefore has failed to state a cognizable claim upon which federal

20  habeas relief can be granted.

21             14.  Vacate Judgement And Sentence

22         Petitioner asserts that the trial court erred by denying his "motion to vacate the

23  judgement and sentence based on newly discovered evidence of prosecution witness Aliy's prior

24  felony convictions and the new exculpatory witness interview of Ms. Barksdale."  (Sixth Am.

25  Pet. at 183.)

26  /////

1    As discussed above, however, the photographs relied upon by petitioner in

2    connection with this claim were not newly discovered evidence and Barksdale was not an

3    exculpatory witness.  There was, therefore, no error by the trial court and petitioner's claim

4    should be rejected.

5    D.  Ineffective Assistance of Counsel

6    Petitioner claims that his trial counsel rendered ineffective assistance of counsel

7    by: (1) conducting ineffective voir dire; (2) failing to investigate and impeach witnesses at trial;

8    (3) failing to renew an objection to the prosecution's "change of clothing theory"; (4) failing to

9    request a jury instruction regarding the preservation of evidence; (5) failing to object to a

10   reference to petitioner being "homeless"; (6) failing to move for a mistrial; (7) failing to call

11   Officer Gregerson as a witness; (8) failing to call a fingerprint expert; (9) failing to object to the

12   prosecution's closing argument; (10) failing to object to the giving of CALJIC No. 17.41.1; (11)

13   failing to employ an identification expert; (12) failing to investigate a conflict of interest; (13)

14   failing to move for dismissal based on loss of the actual stolen money evidence; (14) failing to

15   demur to the information and move to strike petitioner's 1987 and 1994 prior convictions; (15)

16   failing to object to the giving of CALJIC No. 1.00; (16) failing to object to the giving of CALJIC

17   No. 2.90; and (17) failing to present photographic evidence at trial.  After setting forth the

18   applicable legal principles, the court will address each of these aspects of petitioner's ineffective

19   assistance of trial counsel claims in turn below.

20   1.  Legal Standards

21   The Sixth Amendment guarantees the effective assistance of counsel.  The United

22   States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

23   Strickland v. Washington, 466 U.S. 668 (1984).  To support such a claim, a petitioner must first

24   show that, considering all the circumstances, counsel's performance fell below an objective

25   standard of reasonableness. 466 U.S. at 687-88.  After a petitioner identifies the acts or omissions

26   that are alleged not to have been the result of reasonable professional judgment, the court must

32

1   determine whether, in light of all the circumstances, the identified acts or omissions were outside

2   the wide range of professionally competent assistance.  Id. at 690; Wiggins v. Smith, 539 U.S.

3   510, 521 (2003).  Second, a petitioner must establish that he was prejudiced by counsel's

4   deficient performance.  Strickland, 466 U.S. at 693-94.  Prejudice is found where "there is a

5   reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

6   would have been different."  Id. at 694.  A reasonable probability is "a probability sufficient to

7   undermine confidence in the outcome."  Id.  See also Williams, 529 U.S. at 391-92; Laboa v.

8   Calderon, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not determine whether

9   counsel's performance was deficient before examining the prejudice suffered by the defendant as

10   a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the

11   ground of lack of sufficient prejudice . . . that course should be followed."  Pizzuto v. Arave, 280

12   F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

13          In assessing an ineffective assistance of counsel claim "[t]here is a strong

14   presumption that counsel's performance falls within the 'wide range of professional assistance.'"

15   Kimmelman, 477 U.S. at 381 (quoting Strickland, 466 U.S. at 689).  There is in addition a strong

16   presumption that counsel "exercised acceptable professional judgment in all significant decisions

17   made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

18          2. Voir Dire

19          Petitioner claims that his trial counsel failed to fully question prospective jurors 3

20   and 4 to determine if their previous experience as peace officers would have allowed for their

21   dismissal for cause.  (Sixth Am. Pet. at 105.)  Petitioner argues that as a result of his counsel's

22   failure in this regard the defense was forced to use a peremptory challenge "unnecessarily" on

23   prospective juror 4, and was forced to allow prospective juror 3 to be seated on the jury.  (Id. at

24   105-06.)

25          "In all criminal prosecutions," state and federal, "the accused shall enjoy the right

26   to . . . trial . . . by an impartial jury,"  U.S. Const., Amends. 6 and 14.  See also Duncan v.

33

1   <u>Louisiana</u>, 391 U.S. 145 (1968).  "The central inquiry in determining whether a juror should be

2   removed for cause is whether that juror holds particular belief or opinion that will prevent or

3   substantially impair the performance of his duties as a juror in accordance with his instructions

4   and his oath." <u>United States v. Padilla-Mendoza</u>, 157 F.3d 730, 733 (9th Cir. 1998).  The state

5   court's determination of whether the juror can be impartial is a question of fact entitled to the

6   presumption of correctness under § 2254(d).  <u>Patton v. Yount</u>, 467 U.S. 1025, 1036 (1984);

7   <u>Rushen v. Spain</u>, 464 U.S. 114, 120 (1983).  Because resolution of a juror impartiality issue

8   "depends heavily on the trial court's appraisal of witness credibility and demeanor" the United

9   States Supreme Court "has reasoned that a trial court is better positioned to make decisions of

10   this genre, and has therefore accorded the judgment of the jurist-observer 'presumptive weight.'"

11   <u>Thompson v. Keohane</u>, 516 U.S. 99, 111 (1995).

12          Here, petitioner did not raise this claim on direct appeal and therefore the

13   transcript of the voir dire proceedings are not part of the state court record.  Assuming arguendo

14   that the two prospective jurors were indeed former peace officers, petitioner claim would still

15   lack merit.  Petitioner has failed to cite any authority in support of his argument that a juror is

16   biased simply because they were formerly employed in law enforcement.  Morever, petitioner has

17   failed to cite any authority in support his claim that he had a right to have either juror dismissed

18   for cause rather than by way of peremptory challenge.  <u>See</u> <u>Tinsley v. Borg</u>, 895 F.2d 520, 529

19   (9th Cir. 1990) ("We will not presume bias merely because a juror works in law enforcement[.]")

20   Finally, petitioner has failed to allege that juror 3, who served on the jury, was in fact partial or

21   biased against him.

22          Petitioner has failed to establish that his trial counsel's performance was deficient

23   or that he suffered prejudice as a result of his counsel's performance in this regard.  Accordingly,

24   petitioner is not entitled to federal habeas relief on this aspect of his ineffective assistance of

25   counsel claim.

26   /////

3.  Investigate And Impeach

Petitioner next asserts that his trial counsel was ineffective for failing to investigate and impeach prosecution trial witnesses O'Sullivan and Aliy with respect to prior convictions.  (Sixth Am. Pet. at 124-25, 130-31.)

The Sacramento County Superior Court rejected this claim in its August 23, 2001 order denying petitioner's petition for writ of error coram nobis, stating:

> Petitioner claims that counsel failed to impeach the prosecutor's witnesses with prior convictions.  While petitioner claims that one witness had seven prior convictions that were not used for impeachment, he fails to document that claim.  Furthermore, he states that the convictions were under a different name, and there is no showing that trial counsel was aware of the witness's other name.  It is petitioner's obligation to provide the evidence to support his claims.  Since he has failed to do so, this claim fails.

(Resp't's Lod. Doc. No. 7 at 3.)

Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  Strickland, 466 U.S. at 691.  "This includes a duty to . . . investigate and introduce into evidence records that demonstrate factual innocence, or that raise sufficient doubt on that question to undermine confidence in the verdict."  Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir. 2001) (citing Hart v. Gomez, 174 F.3d 1067, 1070 (9th Cir. 1999)).  In this regard, it has been recognized that "the adversarial process will not function normally unless the defense team has done a proper investigation."  Siripongs v. Calderon (Siripongs II), 133 F.3d 732, 734 (9th Cir. 1998) (citing Kimmelman v. Morrison, 477 U.S. 365, 384 (1986)).  Therefore, counsel must, "at a minimum, conduct a reasonable investigation enabling him to make informed decisions about how best to represent his client."  Hendricks v. Calderon, 70 F.3d 1032, 1035 (9th Cir. 1995) (quoting Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994)) (internal citation and quotations omitted).  On the other hand, where an attorney has consciously decided not to conduct further investigation because of reasonable tactical evaluations, his or her performance is not constitutionally

35

1   deficient.  See Siripongs II, 133 F.3d at 734; Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir.

2   1998); Hensley v. Crist, 67 F.3d 181, 185 (9th Cir. 1995).  "A decision not to investigate thus

3   'must be directly assessed for reasonableness in all the circumstances.'"  Wiggins, 539 U.S. at

4   533 (quoting Strickland, 466 U.S. at 691).  See also Kimmelman, 477 U.S. at 385 (counsel

5   "neither investigated, nor made a reasonable decision not to investigate"); Babbitt, 151 F.3d at

6   1173-74.  A reviewing court must "examine the reasonableness of counsel's conduct 'as of the

7   time of counsel's conduct.'"  United States v. Chambers, 918 F.2d 1455, 1461 (9th Cir. 1990)

8   (quoting Strickland, 466 U.S. at 690).  Furthermore, "'ineffective assistance claims based on a

9   duty to investigate must be considered in light of the strength of the government's case.'"  Bragg,

10  242 F.3d at 1088 (quoting Eggleston v. United States, 798 F.2d 374, 376 (9th Cir.1986)).

11          Petitioner's trial counsel was aware of witness O'Sullivan's prior conviction for

12  misdemeanor assault and battery and requested that the trial court allow for O'Sullivan's

13  impeachment based on that conviction.  (RT at 30.)  The trial court reserved ruling on the request

14  so that the parties could conduct further research, but indicated that it was inclined not to permit

15  the misdemeanor conviction to be used for purposes of impeachment because it was eight years

16  old and was not for a crime of moral turpitude.  (Id. at 32-33.)  Thus, petitioner's trial counsel

17  did investigate O'Sullivan's criminal history and raised the prospect of impeaching him with the

18  prior misdemeanor conviction with the trial court.  Whether petitioner's counsel decided not to

19  press the issue further based on the trial court's tentative ruling or based on some other tactical

20  reason, it cannot be said that counsel was deficient for failing to investigate O'Sullivan's prior

21  conviction and evaluating the potential for impeachment based on that conviction.  Moreover,

22  even if counsel's performance was deficient in this regard, petitioner could not establish

23  prejudice given the strength of the evidence against him and the minor impeachment value of

24  O'Sullivan's eight-year-old misdemeanor conviction.

25          With respect to witness Aliy, as previously discussed, petitioner has failed to

26  prove that Aliy had in fact suffered any prior convictions, let alone that his counsel should have

36

1   been aware of those convictions.  Petitioner merely alleges that Aliy suffered convictions under a

2   different name.  It is telling that neither the prosecutor nor petitioner's trial counsel discovered or

3   disclosed any prior convictions for witness Aliy.  Moreover, even if petitioner could establish

4   that his trial counsel's performance was deficient in this respect, he could not establish prejudice

5   given the strength of the evidence against him, particularly O'Sullivan's in-person identification

6   of petitioner as the robber in which witness Aliy played no role.

7           The state court's rejection of this aspect of petitioner's ineffective assistance of

8   counsel claim was neither contrary to, nor an unreasonable application of, clearly established

9   federal law.  Therefore, petitioner is not entitled to federal habeas relief on this aspect of his

10  ineffective assistance of counsel claim.

11              4.  Failure to Renew Objection to Prosecution's "Change of Clothes" Theory

12          Petitioner next argues that his trial counsel provided ineffective assistance by

13  failing to "renew her objections to the prosecutor's theory of Moore changing clothes when the

14  prosecutor continued to inform the jurors of this theory."  (Sixth Am. Pet. at 127.)

15      The above discussion of issues raised by petitioner makes clear that many of his claims

16  revolve around the discrepancy between the clothes the robbery suspect was described as wearing

17  by witnesses and the clothes worn by petitioner at the time his booking photograph was taken at

18  the jail.  None of the claims involving this alleged discrepancy entitle petitioner to federal habeas

19  relief.

20          As conceded by petitioner, his trial counsel did in fact move prior to trial to

21  prevent the prosecution from arguing to the jury that petitioner changed his clothes between the

22  time of his initial detention and when his booking photograph was taken.  (RT at 43-46.)  At that

23  time the trial court ruled that the prosecution would be required to introduce "enough evidence"

24  to "make an appropriate inference of a change of clothes."  (Id. at 46.)  The trial judge also

25  indicated that he would make a final ruling on the issue after all of the evidence had been

26  presented.  (Id.)

1    At trial Officer Manning was shown a suspect identification form which he

2    testified he had filled out when he arrested petitioner and in which he described petitioner as

3    wearing a dark gray jacket or coat, a black knit beanie cap, a white button-up shirt, a white t-shirt

4    and a dark green and maroon scarf. (RT at 253-54.) Officer Manning also testified that

5    petitioner was placed in the back of his patrol car while he completed his investigation, was

6    driven to the police service center where they waited for a police van to transport petitioner to the

7    downtown jail. (Id. at 254-57.) On cross-examination, Officer Manning testified that petitioner

8    was still wearing the above-described dark clothing when put into the police van for transport to

9    the jail. (Id. at 267.) On re-direct examination Officer Manning was shown petitioner's booking

10   photograph and testified that the clothing depicted in that photo was not the clothing petitioner

11   was wearing when officers arrested him and placed him in the police van for transport. (Id. at

12   269.) Officer Baugh also testified that the Officer Manning report accurately described the

13   clothing worn by petitioner when he was apprehended. (Id. at 291.) This testimony provided the

14   basis for a reasonable inference to be drawn that petitioner had somehow managed to change his

15   clothing after his arrest but prior to his booking at the jail.

16   At the end of the trial, during the jury instruction conference and before closing

17   arguments to the jury, the prosecutor requested that the jury be instructed with CALJIC 2.04

18   regarding the fabrication of evidence and CALJIC 2.06 regarding the concealing of evidence.

19   (RT at 364, 366-68.) Defense counsel objected, arguing that no evidence was introduced at trial

20   indicating that petitioner had changed his clothes at any time after his arrest. (Id. at 364.) The

21   prosecution argued that evidence had been introduced that petitioner appeared in one set of

22   clothing "out on Florin Road" at the time of his arrest, that he was clothed differently when his

23   booking photo was taken at the jail later that night and that a reasonable inference from that

24   evidence was that he had changed his clothes. (Id.) The trial judge found the prosecutor's

25   argument persuasive given the testimony and evidence of how petitioner was clothed when

26   arrested and the booking photo in which he appeared in different clothes. (Id. at 365.) In light of

1   that evidence, the trial judge ruled that the prosecution's "change of clothes" theory was

2   permissible argument[7] but supported only the giving of CALJIC 2.06 regarding the concealing of

3   evidence.  (Id. at 365-68.)

4           Petitioner has not explained why he believes his trial counsel should have raised

5   yet another objection, presumably during closing argument, to the prosecution's "change of

6   clothes" theory.  Counsel posed an objection to the prosecution's theory both in a pre-trial

7   motion in limine and again during the jury instruction conference.  Given the trial court's ruling

8   at the jury instruction conference, another objection  would certainly have been properly denied

9   as meritless.  An attorney's failure to make a meritless objection or motion does not constitute

10  ineffective assistance of counsel.  Jones v. Smith, 231 F.3d 1227, 1239 n. 8 (9th Cir. 2000)

11  (citing Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985)).  See also Rhoades v. Henry, 596

12  F.3d 1170, 1179 (9th Cir. 2010) (counsel did not render ineffective assistance in failing to

13  investigate or raise an argument on appeal where "neither would have gone anywhere");

14  Matylinsky v. Budge, 577 F.3d 1083, 1094 (9th Cir. 2009), cert. denied, ___ U.S.___ (2010)

15  (counsel's failure to object to testimony on hearsay grounds not ineffective where objection

16  would have been properly overruled); Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996) ("the

17  failure to take a futile action can never be deficient performance").  Petitioner has failed to

18  establish that his trial counsel's performance was deficient in this regard or that he suffered

19  prejudice as a result of that performance.  Accordingly, he is not entitled to federal habeas relief

20  on this aspect of his ineffective assistance of trial counsel claim.

21           5.  Failure to Request a Jury Instruction

22           Petitioner claims his trial counsel provided ineffective assistance by failing "to

23  request a jury instruction on law enforcement's failure to preserve [the identity of the white male]

24

25      [7]  This ruling was undoubtedly correct based upon the trial testimony of the officers,
26  which was in keeping with their contemporaneous reports, regarding the clothing worn by
    petitioner at the time of his arrest immediately after the robbery.

1  witness, [the actual] monetary evidence, and [Officer Winn's] police report." (Sixth Am. Pet. at

2  127.)

3          The Sacramento County Superior Court rejected this claim in its August 23, 2001

4  order denying coram nobis relief, finding "no cause for counsel to request an instruction on the

5  destruction of evidence since the trial court denied" petitioner's motion regarding this subject.

6  (Resp't's Lod. Doc. No. 7 at 3.)

7          As discussed above, petitioner has not presented this court with any evidence that

8  the unidentified white male customer of the robbed store would have provided testimony

9  exculpating petitioner, nor has he provided any evidence that the photocopies of the stolen

10  money had been "fabricated" or were in any way an insufficient representation of the actual

11  stolen money.

12          With respect to Officer Winn's lost report, Winn testified at petitioner's trial that

13  on the night of the robbery he did not write a report because he was actually off duty when he

14  responded to the 911 call.  (RT at 237-38.)  Several months later the prosecutor asked Winn to

15  write a report.  (Id. at 238.)  Winn turned that report over to the prosecutor.  (Id. at 239.)  Prior to

16  petitioner's preliminary hearing, however, Winn was unable to locate a copy of the report, so he

17  contacted the prosecutor and told him that he "would just redictate [his] report because it was

18  pretty limited."  (Id.)  There is nothing evident from this testimony by Winn that would support

19  an argument that he "failed to preserve evidence."  Petitioner has not provided any clarity as to

20  why he believes his counsel should have used Winn's testimony as the basis for a request for a

21  jury instruction on the failure to preserve evidence.

22          The state court's rejection of this aspect of petitioner's ineffective assistance of

23  counsel claim was neither contrary to, nor an unreasonable application of, clearly established

24  federal law.  Therefore, petitioner is not entitled to federal habeas relief on this aspect of his

25  ineffective assistance of counsel claim.

26  /////

40

6. Homeless Reference

Petitioner claims that his trial counsel "sought and obtained an order from the court that there be no mention of [petitioner] being unemployed," but that counsel nevertheless failed to object when the prosecutor stated that petitioner was homeless three times during closing arguments and that counsel was, therefore, ineffective.  (Sixth Am. Pet. at 127.)

The Sacramento County Superior Court denied relief with respect to this claim in its August 23, 2001 order, finding that petitioner had not shown that the reference to homelessness "was objectionable or prejudicial."  (Resp't's Lod. Doc. No. 7 at 3.)

Once again petitioner has not cited any authority in support of this claim. Assuming, arguendo, that petitioner could establish that his counsel's performance was somehow deficient in this regard, his claim for relief would still fail due to a lack of prejudice.  It is simply not reasonably probable that the jury would have reached a different verdict if only petitioner's trial counsel had objected to any reference to petitioner's homelessness.

The state court's rejection of this aspect of petitioner's ineffective assistance of counsel claim was neither contrary to, nor an unreasonable application of, clearly established federal law.  Therefore, petitioner is not entitled to federal habeas relief on this aspect of his ineffective assistance of counsel claim.

7. Mistrial

Next, petitioner claims that his trial counsel provided ineffective assistance by failing to move for a mistrial after Officer Manning referred to petitioner's "prior booking information" during his testimony in violation of the parties agreement not to disclose petitioner's prior convictions.  (Sixth Am. Pet. at 128.)

As discussed above, petitioner suffered no prejudice as a result of his counsel's failure to object since Manning's momentary reference to "prior booking information" was brief, vague and harmless, the answer was stricken and the jury was not allowed to consider it. Moreover, a motion by petitioner's trial counsel to declare a mistrial based on this reference

41

1   would have been meritless.  As noted above, an attorney's failure to make a meritless objection

2   or motion does not constitute ineffective assistance of counsel.  Jones, 231 F.3d at 1239 n. 8.

3          For the reasons stated above, petitioner is not entitled to federal habeas relief on

4   this aspect of his ineffective assistance of trial counsel claim.

5          8.  Failing to Call Officer Gregerson

6          Petitioner asserts that his trial counsel provided ineffective assistance by failing to

7   offer the testimony of Officer Gregerson who inventoried petitioner's clothing after his arrest.

8   (Sixth Am. Pet. at 129.)

9          Petitioner's primary defense, however, was that he could not have been the robber

10  because he was wearing different clothes than the robbery suspect, as proven by his booking

11  photo.  The prosecutor attempted to combat that defense by arguing that petitioner had changed

12  his clothes after he was detained.  Petitioner's trial counsel successfully argued that the

13  prosecutor had to introduce some evidence at trial to allow an appropriate inference of a possible

14  change of clothes in order to argue that theory to the jury.  Calling Officer Gregerson to testify

15  would only have helped the prosecutor further establish the reasonable nature of that inference.

16  Moreover, Gregerson's testimony was unnecessary for petitioner's defense since his trial counsel

17  introduced the actual booking photograph into evidence showing the clothing discrepancy.

18         Petitioner's trial counsel may have made the tactical decision that calling

19  Gregerson to testify would be unnecessarily redundant and only risk aiding the prosecutor's

20  attempt to establish a reasonable inference that petitioner had changed his clothes after his

21  detention and before his booking.  Such a tactical decision would not have been unreasonable

22  under the circumstances of this case and thus does not constitute deficient performance.  See

23  Strickland, 466 U.S. at 690 ("strategic choices made after thorough investigation of law and facts

24  relevant to plausible options are virtually unchallengeable").

25         Accordingly petitioner is not entitled to federal habeas relief on this aspect of his

26  ineffective assistance of trial counsel claim.

### 9. Fingerprint Expert

Petitioner next claims that his counsel provided ineffective assistance by failing to call Sacramento Sheriff's Deputy Identification Technician Henessey to "testify that the fingerprints found on the evidence did not belong to the petitioner." (Sixth Am. Pet. at 130.) Petitioner argues that "this testimony would have indicated that someone else was the perpetrator of the crime and that [petitioner] was innocent, and also would lead to the tracing of the fingerprints to the actual suspect." (Id.)

The record however belies petitioner's claim. At trial, petitioner's counsel read into the record a stipulation that if Henessey were called she would have testified that one fingerprint was recovered from the brown paper bag and that print "was found to be of no comparison value," meaning that the identification of the person who left the print could not be identified. (RT at 356.) It is apparent, therefore, that Henessey would not have testified as petitioner alleges had she been called as a witness at trial and that his trial counsel was not deficient for failing to call her.

Accordingly petitioner is not entitled to federal habeas relief on this aspect of his ineffective assistance of trial counsel claim.

### 10. Failing to Object to Closing Arguments

Petitioner argues that the his trial counsel provided ineffective assistance by failing to object when the trial judge mistakenly referred to the parties' closing arguments as "opening arguments." (Sixth Am. Pet. at 134.)

This claim is clearly meritless. Petitioner cannot demonstrate prejudice with respect to this alleged error because it is not reasonably probable that the jury would have reached a different verdict if only petitioner's trial counsel had objected to the trial judge's simple misstatement. Accordingly petitioner is not entitled to federal habeas relief on this aspect of his ineffective assistance of trial counsel claim.

/////

43

1          11.  Failing to Object to CALJIC No. 17.41.1

2          Petitioner asserts that his trial counsel provided ineffective assistance by failing to

3   object to the giving of California Jury Instruction No. 17.41.1.  (Sixth Am. Pet. at 134.)  As noted

4   above, however, the state appellate court concluded that this instruction was properly given at

5   petitioner's trial.  (See Opinion at 10-11.)  Moreover, the Ninth Circuit Court of Appeals has

6   determined that no United States Supreme Court decision has held that an instruction such as

7   CALJIC No. 17.41.1 violates the constitution.  Brewer, 378 F.3d at 955-57.  Petitioner, therefore,

8   has failed to establish that his counsel performance was deficient in this regard.   Accordingly

9   petitioner is not entitled to federal habeas relief on this aspect of his ineffective assistance of trial

10  counsel claim.

11          12.  Failing to Employ an Identification Expert

12          Petitioner argues that his trial counsel provided ineffective assistance by failing to

13  "employ an expert identification witness" to investigate and support petitioner's claim that the

14  prosecution's witnesses mistakenly "accosted and detained" petitioner.  (Sixth Am. Pet. at 171.)

15          The Sacramento County Superior Court rejected petitioner's argument in this

16  regard in its August 23, 2001 order, stating:

17          Petitioner claims that counsel was deficient for failing to call an
            expert witness on the fallibility of eyewitness identification.  He
18          presents no evidence on what such a witness would testify to; nor
            does he allege that an expert witness would provide any
19          information that was not already argued using a layperson's
            perspective, i.e., that petitioner did not match the original
20          description given for the suspect.  Furthermore, petitioner has
            failed to show that he was prejudiced by the failure to call an
21          expert witness.

22  (Resp't's Lod. Doc. No. 7 at 2-3.)

23          Petitioner has again failed to allege before this court that any identification expert

24  would have agreed to testify or that the testimony of such an expert would have supported his

25  defense.  As such, petitioner has failed to establish prejudice with respect to this claim.  See

26  Wildman v. Johnson, 261 F.3d 832, 839 (9th Cir. 2001) (speculation that a helpful expert could

44

1  be found or would testify on petitioner's behalf insufficient to establish prejudice); Bragg v.

2  Galaza, 242 F.3d 1082, 1088 (9th Cir. 2001) (no ineffective assistance where petitioner did

3  "nothing more than speculate that, if interviewed," a witness might have given helpful

4  information); Dows v. Wood, 211 F.3d 480, 486 (9th Cir. 2000) (no ineffective assistance of

5  counsel where there was no evidence in the record that a helpful witness actually existed and

6  petitioner failed to present an affidavit establishing that the alleged witness would have provided

7  helpful testimony for the defense); United States v. Berry, 814 F.2d 1406, 1409 (9th Cir. 1987)

8  (appellant failed to meet the prejudice prong of an ineffective assistance claim because he offered

9  no indication of what potential witnesses would have testified to or how their testimony might

10  have changed the outcome of the hearing).

11          Moreover, petitioner cannot demonstrate prejudice with respect to this argument

12  since it is not reasonably probable that the jury would have reached a different verdict if only

13  petitioner's trial counsel had retained an expert who would have testified in support of

14  petitioner's defense.  This is especially true given the overwhelming nature of the evidence of

15  petitioner's guilt.  Even without the eyewitness identification, petitioner was found near the scene

16  of the store robbery, after being chased from the store by customers and employees, and was

17  found to be in possession of the exact amount of money stolen in the robbery.

18          The state court's rejection of this aspect of petitioner's ineffective assistance of

19  counsel claim was neither contrary to, nor an unreasonable application of, clearly established

20  federal law.  Therefore, petitioner is not entitled to federal habeas relief on this aspect of his

21  ineffective assistance of counsel claim.

22                  13.  Conflicts of Interest

23          Petitioner next asserts that his trial counsel provided ineffective assistance by

24  failing to investigate and disclose a "conflict of interest" based on the Sacramento County Public

25  Defender's Office, which employed petitioner's counsel, having allegedly previously represented

26  prosecution witnesses O'Sullivan and Aliy.  (Sixth Am. Pet. at 171-72.)  Petitioner also argues

1    that his trial counsel was ineffective as a result of a conflict of interest stemming from

2    petitioner's having previously worked for, and been fired by, the Sacramento County Public

3    Defender's Officer.  (Id. at 136.)

4           The Sixth Amendment right to counsel includes the right to counsel of undivided

5    loyalty.  Wood v. Georgia, 450 U.S. 261, 271-72 (1981).  "In order to demonstrate a violation of

6    his Sixth Amendment rights on the basis of an alleged conflict, a defendant must establish that an

7    actual conflict of interest adversely affected his lawyer's performance."  Cuyler v. Sullivan, 446

8    U.S. 335, 350 (1980).  See also Mickens v. Taylor, 535 U.S. 162, 172 n. 5 (2002) (an actual

9    conflict "is not something separate and apart from adverse effect"); Bonin v. Calderon, 59 F.3d

10   815, 825 (9th Cir. 1995).  An adverse impact in the Cuyler sense must be one that "significantly

11   worsens counsel's representation of the client before the court or in negotiations with the

12   government."  United States v. Mett, 65 F.3d 1531, 1535 (9th Cir. 1995).  Although a defendant

13   alleging a conflict of interest "need not demonstrate prejudice," he must prove that "counsel

14   actively represented conflicting interests."  Cuyler, 446 U.S. at 349.  Courts "generally presume

15   that the lawyer is fully conscious of the overarching duty of complete loyalty to his or her client."

16   Burger v. Kemp, 483 U.S. 776, 784 (1987).

17          Here, petitioner's has failed to prove that his trial counsel actively represented

18   conflicting interests.  Petitioner has presented no evidence to support his bare allegation that the

19   Sacramento County Public Defender's Office did in fact represent O'Sullivan and Aliy at one

20   time.  Moreover, the allegation that the Sacramento County Public Defender's Office previously

21   represented O'Sullivan and Aliy, even if true, fails to establish that an actual conflict of interest

22   adversely affected the performance of petitioner's trial counsel in any way.  The same can be said

23   for petitioner's claim that his employment and subsequent termination by the public defender's

24   office nearly seventeen years prior to his arraignment on the robbery charge created a conflict of

25   interest.

26   /////

46

1   Accordingly petitioner is not entitled to federal habeas relief on this aspect of his

2   ineffective assistance of trial counsel claim.

3   14.   Failing to Move For Dismissal

4   Petitioner argues that his trial counsel provided ineffective assistance by failing to

5   move for a dismissal "due to the loss and fabrication . . . of the monetary evidence."  (Sixth Am.

6   Pet. at 173.)

7   As discussed above, however, the "monetary evidence" associated with the

8   robbery was not lost and there is no evidence before this court that the photocopies of the stolen

9   money were fabricated in any way.  Thus there appears to have been no basis for petitioner's

10   counsel to move for dismissal due to the alleged loss of evidence .  As such, petitioner's trial

11   counsel was not deficient for failing to file a motion to dismiss on such grounds.

12   Accordingly petitioner is not entitled to federal habeas relief on this aspect of his

13   ineffective assistance of trial counsel claim.

14   15.   Failing to Demur And Move to Strike

15   Petitioner next asserts that his trial counsel provided ineffective assistance by

16   failing "to demure to the information even though the information . . . had erroneous prior

17   conviction allegations" and by failing to move to strike petitioner's 1987 conviction because that

18   conviction was the result of an "unknowingly and unintelligently entered plea agreement"  (Sixth

19   Am. Pet. at 173-74.)

20   Again, as a general rule, if a prior conviction used to enhance a state sentence is

21   fully expired in its own right, the defendant may not collaterally attack that prior conviction

22   through a § 2254 petition.  Daniels, 532 U.S. at 383; Lackawanna, 532 U.S. at 403-04; Gill, 342

23   F.3d at 919 n. 7.  Here petitioner's 1987 conviction was fully expired at the time it was relied

24   upon at sentencing.

25   Moreover, petitioner has failed to allege any facts in support of his claim that his

26   trial counsel should have challenged his 1987 conviction as being the result of an "unknowingly

1  and unintelligently entered plea agreement."  Petitioner's claim in this regard is vague and

2  conclusory and relief should be denied on that basis alone.  See Jones v. Gomez, 66 F.3d 199,

3  204 (9th Cir. 1995) ("[c]onclusory allegations which are not supported by a statement of specific

4  facts do not warrant habeas relief") (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)).[8]

5         For these reasons, petitioner is not entitled to federal habeas relief on this aspect

6  of his ineffective assistance of trial counsel claim.

7               16.  Failing to Object to CALJIC No. 1.00

8         Petitioner claims that his trial counsel provided ineffective assistance by failing to

9  object to the trial judge instructing the jury pursuant to CALJIC No. 1.00.  (Sixth Am. Pet. at

10  174.)

11        As noted above, however, the state appellate court found that it was proper for the

12  trial court to issue this jury instruction.  (See Opinion at 9-10.)  Moreover, petitioner has cited no

13  authority clearly establishing that the use of this instruction violates a criminal defendant's

14  constitutional rights.  Thus, there appears to have been no basis upon which petitioner's trial

15  counsel could have based an objection to the instruction in question.  Moreover, under the facts

16  of this case, any error in failing to object to the instruction would not have been prejudicial.

17        For all these reasons, petitioner is not entitled to federal habeas relief on this

18  aspect of his ineffective assistance of trial counsel claim.

19               17.  Failing to Object to CALJIC No. 2.90

20        Petitioner next asserts that his trial counsel provided ineffective assistance by

21  failing to object to the trial judge instructing the jury pursuant to CALJIC No. 2.90.  (Sixth Am.

22  Pet. at 175.)

23        Again, however, the state appellate court found that it was proper for the trial

24  court to provide this instruction to petitioner's jury.  (Opinion at 10.)  Moreover, the Ninth

25

26       [8]  Indeed, a great many of petitioner's claims before this court could properly be
characterized as vague and conclusory, with habeas relief being denied on that basis alone.

1  Circuit Court of Appeals has specifically upheld the constitutionality of the version of CALJIC

2  No. 2.90 with which petitioner's jury was instructed.  See Lisenbee, 166 F.3d at 999-1000.  There

3  appears, therefore, to have been no basis upon which petitioner's trial counsel could have

4  objected.  Furthermore, under the facts of this case, even if counsel's failure to object was in

5  error, that error would not have been prejudicial to petitioner.

6          18.  Photographic Evidence

7                  Petitioner claims that his trial counsel provided ineffective assistance by failing to

8  introduce into evidence at trial the three photographs allegedly showing petitioner wearing an

9  orange/red sweater prior to his arrest.  (Sixth Am. Pet. at 215.)

10                 The California Court of Appeal specifically rejected petitioner's argument that his

11  trial counsel rendered ineffective assistance by failing to introduce these photographs into

12  evidence.  The court reasoned as follows:

13                 Here, the record indicates that defendant's trial counsel made a
                   tactical decision not to introduce the photographs because they
14                 depicted defendant wearing a hat similar to the hat worn by the
                   robber.  And the trial court found that counsel had, in fact, made
15                 the tactical decision not to introduce such photographs of
                   defendant.
16
17                 On this record, the decision appears to have been a rational one.
                   Had the photographs been introduced by the defense, alerting the
18                 People to defendant's antecedent possession of the sweater he wore
                   at booking, the prosecutor could well have argued that (1)
19                 defendant was wearing the sweater underneath the clothing and the
                   outer coat he had on at the time of his arrest, and (2) defendant
20                 habitually wore a hat.  The photograph of defendant in a hat that
                   looked like the one worn by the robber was logically something to
21                 be avoided.  Instead, trial counsel rationally could decide to rely on
                   the state of the evidence; point out that the prosecutor admittedly
22                 had no witness of any "switch" of clothing; and argue that the
                   identification made by the manager was shaky, the officer may
23                 have misrepresented the description of defendant's clothing to
                   buttress a shaky identification, and the difference in clothing
24                 showed that defendant was not the robber.

25                 Defendant suggests his trial counsel's tactical decision was not
                   rationale because the hat depicted in the photographs had "minimal
26                 significance" since it "appears to be an unremarkable and common
                   type of beanie cap."  Even if it were true that the cap is a common

                                        49

> one, trial counsel reasonably could conclude that photographic
> evidence showing defendant owned a hat like the one worn by the
> robber would have been damaging to the defense of mistaken
> identity.

(Opinion at 6-7.)

Petitioner's counsel was aware of the three photographs now relied upon by petitioner but made a tactical decision not to use them based on the concern that petitioner appears in the photographs to be wearing a cap similar to that worn by the robber. Such a tactical decision was not unreasonable under the facts of this case and petitioner's counsel was not ineffective in making this decision. See Strickland, 466 U.S. at 690 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"). Moreover, even if trial counsel's performance was deficient in this regard, petitioner has not established that the photographs would have been sufficient to overcome the other evidence introduced at trial against him. Thus, petitioner has not demonstrated prejudice since there is not a reasonable probability that, but for counsel's alleged unprofessional error in failing to introduce the three photograph, the result of the proceeding would have been different. Strickland, 466 U.S. at 694.

The state court's rejection of this aspect of petitioner's ineffective assistance of counsel claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Therefore, petitioner is not entitled to federal habeas relief on this aspect of his ineffective assistance of counsel claim.

E. Ineffective Assistance of Counsel (New Trial)

Petitioner claims that th counsel he retained following his conviction for the purpose of moving for a new trial, Mr. Haltom, also rendered ineffective assistance. Specifically, petitioner argues that his post-conviction counsel failed to investigate "Aliy's true name and prior convictions," failed to employ an expert witness to "prove that the sweater within the different photographs were (sic) the same sweater as the sweater within the booking photograph," and

failed to obtain "an exculpatory interview" from Barksdale.  (Sixth Am. Pet. at 184-85.)

As previously discussed, petitioner has failed to show that the individual who testified at his trial identified as Rahman Aliy had in fact suffered prior convictions under an alias.  Petitioner has also failed to even allege that an expert would have testified regarding the sweater depicted in photographs, what such testimony would have been, and how that testimony would have changed the outcome of his trial.  As noted by the state appellate court, the prosecutor could simply have responded to any such expert testimony by arguing that petitioner "was wearing the sweater underneath the clothing and the outer coat he had on at the time of his arrest." (Opinion at 6.)  Finally, there is no evidence that Barksdale would have provided "exculpatory" testimony, since her statement merely described the robbery subject as a few inches taller than petitioner.  Such testimony would not have persuasively rebutted O'Sullivan's positive identification of petitioner as the robber.

Ultimately, in order to demonstrate prejudice with respect to this claim, petitioner must establish that his motion for new trial would have been granted if his counsel had submitted the evidence described above in support of that motion.  Specifically, petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  Petitioner has failed to make such a showing with respect to this aspect of his ineffective assistance of counsel claim.  Accordingly, he is not entitled to federal habeas relief.

F.  Ineffective Assistance of Counsel (Romero Motion)

At sentencing, the prosecutor stated that petitioner's counsel, "told me today he was withdrawing" petitioner's Romero motion.[9]  (RT at 630.)  Petitioner argues that his trial counsel provided ineffective assistance by failing to "deny and object to the prosecuting

---

[9]  This is a shorthand reference to the decision in People v. Superior Court (Romero), 13 Cal.4th 497 (1996).  In Romero, the California Supreme Court held that under California's Three Strikes Law a trial judge has the discretion to strike a prior felony conviction for the purposes of sentencing.

1   attorney's false claim" in this regard and that his counsel did not have a reasonable basis to

2   withdraw the motion.  (Sixth Am. Pet. at 206.)

3            Petitioner, however, has failed to provide this court with any evidence in support

4   of his bare allegation that the prosecutor's assertion was false.  Petitioner has also failed to show

5   that, assuming his counsel did withdraw a Romero motion, defense counsel's choice to do so was

6   not based on a sound legal conclusion.  Moreover, even if petitioner could demonstrate that his

7   counsel's performance in this regard was deficient, petitioner's claim would still lack merit due

8   to his failure to establish any prejudice stemming from the alleged error.  In this regard, the trial

9   judge stated that in any event he was "inclined to keep" all of petitioner's prior in for purposes of

10  sentencing.  (RT at 630.)

11           For all these reasons, petitioner is not entitled to federal habeas relief on this

12  aspect of his claim of ineffective assistance of counsel.

13       G.  Ineffective Assistance of Appellate Counsel

14           Petitioner claims that his appellate counsel also provided ineffective assistance.

15  Specifically petitioner claims that on appeal his appellate counsel failed to challenge petitioner's

16  prior conviction, failed to challenge the timeliness of the amended information filed by the

17  prosecution, failed to challenge the denial of petitioner's motion to dismiss, failed to challenge

18  the denial of the motion for a new trial, failed to raise a factual innocence claim, failed to

19  investigate witness Aliy's alleged prior convictions, failed to employ an expert witness to match

20  the sweaters depicted in the photos, failed to interview Barksdale, failed to raise a meritorious

21  claim of juror bias, and failed to raise a claim of ineffective assistance of trial counsel.  (Sixth

22  Am. Pet. at 160-62, 186, 188-90.)

23           The Strickland standards apply to appellate counsel as well as trial counsel.  Smith

24  v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).

25  However, an indigent defendant "does not have a constitutional right to compel appointed

26  counsel to press nonfrivolous points requested by the client, if counsel, as a matter of

1   professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751

2   (1983).  Counsel "must be allowed to decide what issues are to be pressed."  Id.  Otherwise, the

3   ability of counsel to present the client's case in accord with counsel's professional evaluation

4   would be "seriously undermined."  Id.  See also Smith v. Stewart, 140 F.3d 1263, 1274 n. 4 (9th

5   Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is

6   not even particularly good appellate advocacy.")  There is, of course, no obligation to raise

7   meritless arguments on a client's behalf.  See Strickland, 466 U.S. at 687-88 (requiring a

8   showing of deficient performance as well as prejudice).  Thus, counsel is not deficient for failing

9   to raise a weak issue.  See Miller, 882 F.2d at 1434.  In order to demonstrate prejudice in this

10  context, petitioner must show that, but for appellate counsel's errors, he probably would have

11  prevailed on appeal.  Id at 1434 n. 9.

12          Petitioner has failed to demonstrate that his appellate counsel rendered ineffective

13  assistance.  Appellate counsel's decision to decline to present the issues now suggested by

14  petitioner and to instead press only issues on appeal that counsel believed, in his professional

15  judgment, had more merit than the issues now suggested by petitioner was "within the range of

16  competence demanded of attorneys in criminal cases."  McMann v. Richardson, 397 U.S. 759,

17  771 (1970).  Further, as set forth above, this court has not found merit in any of the substantive

18  claims raised in the instant federal habeas petition.  Of course, petitioner's appellate counsel had

19  no obligation to raise these meritless issues on appeal.  Strickland, 466 U.S. at 687-88.

20          Accordingly, petitioner is not entitled to federal habeas relief on his claim of

21  ineffective assistance by appellate counsel.

22      H.  Sentencing Error

23          Petitioner raises several claims with respect to his sentence.  Specifically,

24  petitioner alleges that: (1) he was not represented by counsel at his sentencing hearing; (2) the

25  trial court failed to strike his 1987 prior conviction; (3) the trial court erred in imposing

26  restitution; (4) the trial court erred in using petitioner's prior strikes to enhance his sentence; (5)

53

1  his sentence of an aggregate term of forty-years to life in prison constitutes cruel and unusual

2  punishment; (6) the sentencing enhancements imposed as part of his judgment are

3  unconstitutional and were applied in violation of Cunningham; and (7) his sentence is based on a

4  discriminatory law.  The court will examine these claims in turn below.

5              1.  Representation at Sentencing

6              Petitioner claims that he was not represented by counsel at his January 19, 2001,

7  sentencing because that representation ended on November 17, 2000.  (Sixth Am. Pet. at 155.)

8              Review of the record before this court reflects that petitioner's claim is false.

9  Petitioner appeared at his January 19, 2001 sentencing hearing represented by his retained

10  counsel, Victor Haltom.  (RT at 600.)  As discussed above in connection with petitioner's trial

11  court error claims, the record does reflect that at the beginning of the sentencing hearing, when

12  petitioner's retained counsel was arguing that the court should strike petitioner's prior

13  convictions for purposes of sentencing, petitioner interjected that he would like to make a

14  Marsden motion.  (Id. at 601.)  The trial judge informed petitioner that a "Marsden hearing is

15  only appropriate if you have an appointed lawyer" and that, while petitioner was free to "fire" his

16  retained lawyer, in light of the length of time the case had taken and the number of attorneys who

17  had already been involved on petitioner's behalf, if petitioner elected to relieve his retained

18  counsel, the court would nonetheless proceed with sentencing.  (Id. at 602.)  Petitioner consulted

19  with his retained counsel, who thereafter stated to the court that petitioner "indicated he wants

20  me to represent him at this hearing."  (Id. at 603.)   Petitioner's counsel argued at length on

21  petitioner's behalf and even called petitioner to testify at the hearing.  (Id. at 603-30.)

22  Petitioner's claim that he was not represented by counsel at his sentencing is frivolous in light of

23  this record.

24              2.  1987 Prior Conviction

25              Petitioner next argues that his 1987 conviction, which was relied upon at the time

26  of sentencing in this case, was the result of a guilty plea that he "did not knowingly, intelligently

54

1    and voluntarily" enter because his sentence under that conviction "exceeded the maximum

2    sentence" authorized under California law.  (Sixth Am. Pet. at 156, 232-42.)  Petitioner also

3    claims that at the time of his 1987 sentencing he was told that a subsequent felony conviction

4    would only result in the imposition of a five-year enhancement and not a life sentence.  (Id. at

5    179.)

6            As a noted above, as a general rule, if a prior conviction used to enhance a state

7    sentence is fully expired in its own right the defendant may not collaterally attack that conviction

8    through a § 2254 petition.  Daniels, 532 U.S. at 383; Lackawanna, 532 U.S. at 403-04; Gill, 342

9    F.3d 911at 919 n. 7.  In this regard, the United States Supreme Court has held that "once a state

10   conviction is no longer open to direct or collateral attack in its own right because the defendant

11   failed to pursue those remedies while they were available (or because the defendant did so

12   unsuccessfully), the conviction may be regarded as conclusively valid."  Lackawanna, 532 U.S.

13   at 403.  The Supreme Court has recognized the following exception to this general rule:  a

14   defendant may challenge an expired conviction in the context of an enhanced sentence "on the

15   basis that the prior conviction used to enhance the sentence was obtained where there was a

16   failure to appoint counsel in violation of the Sixth Amendment, as set forth in Gideon v.

17   Wainwright."  Lackawanna, 532 U.S. at 404 (citing Gideon v. Wainwright, 372 U.S. 335

18   (1963)).  See also Daniels, 532 U.S. at 382 ("this rule is subject to only one exception"); Franklin

19   v. Small, 161 F. Supp.2d 1087, 1102 n. 3 (N.D. Cal. 2001).

20          In Daniels, the Supreme Court also suggested that another exception to this

21   general rule may be available in "rare cases in which no channel of review was actually available

22   to a defendant with respect to a prior conviction, due to no fault of his own."  532 U.S. at 383.

23   The Court in Daniels did not elaborate on the type of "rare" case it was referring to in this regard.

24   However, in Lackawanna the Supreme Court provided as an example a case in which a state

25   court, without justification, refused to rule on a constitutional claim that was properly presented

26   to it or a case in which, after the time for direct or collateral review had expired, the defendant

1   obtained compelling evidence of actual innocence which he could not have uncovered in a timely

2   manner.  532 U.S. at 405.  In such circumstances an exception to the general rule barring

3   collateral attack on an expired sentence may be warranted because a federal habeas petition

4   directed at a sentence enhanced by such an expired sentence "may effectively be the first and

5   only forum available for review of the prior conviction."  Id. at 406.  The court in Lackawanna

6   explained the rationale for allowing a collateral challenge to a prior conviction under such rare

7   circumstances as follows:

> The general rule we have adopted here and in Daniels reflects the
> notion that a defendant properly bears the consequences of either
> forgoing otherwise available review of a conviction or failing to
> successfully demonstrate constitutional error.  It is not always the
> case, however, that a defendant can be faulted for failing to obtain
> timely review of a constitutional claim.

12  532 U.S. at 405.

13          Here, petitioner has not proven that his 1987 prior conviction falls into any

14  possible exception to the general rule that would allow him to collaterally attack that conviction.

15  Moreover, while federal due process requires the trial court to inform a criminal defendant of the

16  direct consequences of a plea, the court need not advise the defendant of "all the possible

17  collateral consequences."  United States v. Littlejohn, 224 F.3d 960, 965 (9th Cir. 2000).  See

18  also Torrey v. Estelle, 842 F.2d 234, 235 (9th Cir. 1988).  "Direct consequences" are those that

19  have "a definite, immediate and largely automatic effect on the range of the defendant's

20  punishment."  Littlejohn, 224 F.3d at 965 (quoting Torrey, 842 F.2d at 236).  "The possibility

21  that the defendant will be convicted of another offense in the future and will receive an enhanced

22  sentence based on an instant conviction is not a direct consequence of a guilty plea," and a

23  defendant's guilty plea is voluntary even if the defendant is not advised of that collateral

24  consequence during the plea colloquy.  United States v. Brownlie, 915 F.2d 527, 528 (9th Cir.

25  /////

26  /////

56

1990).[10]  Finally, petitioner's argument that at the time of his 1987 sentencing he was promised

that a subsequent felony conviction would result only in the imposition of a five-year

enhancement and not a life sentence, has been rejected by courts considering an identical claim.

See Clark v. Marshall, No. CV 04-481-DDP (MAN), 2009 WL 3270923, at *7 (C.D. Cal. Oct. 8,

2009); Rhodes v. Tilton, No. CV 08-02363-SGL (RZ), 2009 WL 2407906, at *3 (C.D. Cal. July

31, 2009)

        For these reasons, petitioner is not entitled to federal habeas relief on this aspect

of his claim of sentencing error.

        3.  Restitution

        Petitioner asserts that after he was initially ordered as part of his sentence to pay

restitution in the amount of $5,000, he was later mistakenly ordered to pay an additional $5,000.

(Sixth Am. Pet. at 159-60.)

        The Sacramento County Superior Court specifically rejected petitioner's claim

that his restitution order was improper in its order of August 22, 2006, in which the court

reasoned as follows:

> Petitioner claims he was improperly ordered to pay $5000 in
> restitution fines on two separate occasions in the same case.  He
> claims that the fines were imposed on January 21, 2001 by the
> original sentencing judge and again sometime between January 21
> and April 27, 2001 by Judge Marlette.  According to the minute
> orders in the underlying case, Petitioner's original sentencing was
> set for January 19, 2001.  Although Petitioner's prison sentence
> was imposed, the matter was continued to January 25 pending
> rulings on motions for bail pending appeal, appointment of
> substitute counsel, and imposition of the statutory restitution fine.
> The sentence was stayed.  Therefore, no restitution fines were
> imposed on January 21.  On February 2, 2001, a restitution fine of
> $5000 was ordered and stayed; and additional restitution fine of
> $5000 was stayed pursuant to Penal Code section 1202.45.  On
> April 27, all stays were lifted and the sentence and restitution fines

---

[10]  Of course, "[a]bsent a showing of fundamental unfairness, a state court's
misapplication of its own sentencing laws does not justify federal habeas relief."  Christian v.
Rhode, 41 F.3d 461, 469 (9th Cir. 1994).  See also Little v. Crawford, 449 F.3d 1075, 1082 (9th
Cir. 2006).

earlier ordered were imposed.  Petitioner's abstract of judgment, most recently amended on March 20, 2003, shows a restitution fine of $5000 pursuant to Penal Code section 1202.4(b) and a suspended restitution fine of $5000 pursuant to Penal Code section 1202.45.  As Petitioner has not shown that he was ordered to pay restitution fines twice, he is not entitled to any relief.

(Resp't's Lod. Doc. No. 14 at 3-4.)

Petitioner's claim that the state court violated state law in improperly imposing restitution fines in his case is not cognizable in this federal habeas corpus proceeding.  As the United States Supreme Court has instructed:

We have stated many times that federal habeas corpus relief does not lie for errors of state law. Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.

Estelle, 502 U.S. at 67-68 (citations and internal quotation marks omitted).  Thus, a violation of state law, standing alone, is not cognizable in federal court on habeas corpus.  Little v. Crawford, 449 F.3d 1075, 1082 (9th Cir. 2006); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000) (citing Estelle, 502 U.S. at 67); Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994).  Moreover, as the state court explained, petitioner's claim in this regard has no factual basis and is meritless.

Accordingly, petitioner is not entitled to federal habeas relief on this claim.

4.  Use of Prior Strikes

Petitioner argues that two of his prior felony convictions were never "explicitly deem[ed]" violent or serious and therefore should not have been used as strikes in imposing his sentence in this case.  (Sixth Am. Pet. at 201-02; 234-42.)

Petitioner's claim involves an interpretation of state sentencing law.  As noted above, "it is not the province of a federal habeas court to reexamine state court determinations on state law questions ."  Estelle, 502 U.S. at 67-68.  So long as a state sentence "is not based on any proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigency, the penalties for violation of state statutes are matters of state concern."

58

Makal v. State of Arizona, 544 F.2d 1030, 1035 (9th Cir. 1976).  Thus, "[a]bsent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief."  Christian, 41 F.3d at 469.

Here, petitioner concedes that the prior convictions relied upon by the sentencing court were for robbery.  (Sixth Am. Pet. at 201.)  Under California law any robbery is classified as a serious or violent felony.  Cal. Penal Code §§ 667.5(c)(9), 1170.12(b)(1).  Thus, petitioner has failed to show that the use of his prior robbery convictions as strikes was a misapplication of California sentencing law, let alone so fundamentally unfair as to arguably rise to the level of a constitutional violation.

Accordingly, petitioner is not entitled to federal habeas relief with respect to this aspect of his claim of sentencing error.

### 5. Cruel and Unusual Punishment

Petitioner next claims that his sentence of forty-years to life in state prison constitutes cruel and unusual punishment.  (Sixth Am. Pet. at 229.)  In this regard, petitioner notes that "no one was injured but himself" as a result of the robbery of which he was convicted and argues that his sentence is, therefore, excessive.  (Id. at 229-31.)

The California Court of Appeal specifically rejected petitioner's claim that his sentence constituted cruel and unusual punishment.  The court reasoned as follows:

> Defendant claims his sentence of 40 years to life is cruel and unusual in violation of both the California and United States Constitutions.  Defendant failed to make this argument in the trial court; thus, it is waived.  (People v. DeJesus (1995) 38 Cal. App.4th 1, 27; People v. Scott (1994) 9 Cal.4th 331, 354.)  In any event, it fails on the merits.
>
> To the extent that the Eighth Amendment of the United States contains a "proportionality" requirement (compare Harmelin v. Michigan (1991) 501 U.S. 957, 961-996 (lead opn. of Scalia, J.) with id. at pp. 996-1009 (conc. opn. of Kennedy, J.)), at most it precludes only "extreme sentences that are 'grossly disproportionate' to the crime," i.e., to the offense and offender. (Id. at p. 1001 (conc. opn. of Kennedy, J.).)

/////

1   Here, defendant was convicted of a robbery, a "violent" felony. (§
2   667.5, subd. (c)(9).)  It was not a "petty" offense. (Cf. Brown v.
    Mayle (9th Cir. 2002) 283 F.3d 1019.)  And this robbery was not
    defendant's first venture into violent crime.  His recidivism is
3   extreme; he has 15 prior robbery convictions.  Therefore, to claim
    his sentence is grossly disproportionate to his offense and to him as
4   the offender is frivolous. (Cf. Harmelin v. Michigan, supra, 501
    U.S. 957 [a sentence of life without the possibility of parole
5   imposed on a recidivist offender for possession of 672 grams of
    cocaine was not cruel and unusual punishment within the meaning
6   of the Eighth Amendment]; Rummel v. Estelle (1980) 445 U.S.
    263 [a life sentence imposed under a Texas recidivist statute for a
7   defendant convicted of obtaining $120.75 by false pretenses after
    incurring previous convictions for fraudulent use of a credit card
8   and passing a forged check was not cruel and unusual
    punishment].)
9
    The California test is separate from its counterpart in the federal
10   Constitution. (People v. Cartwright (1995) 39 Cal.App.4th 1123,
    1135-1136; In re Lynch (1972) 8 Cal.3d 410, 424.)  A punishment
11   violates our state Constitution if "it is so disproportionate to the
    crime for which it is inflicted that it shocks the conscience and
12   offends fundamental notions of human dignity." (In re Lynch,
    supra, 8 Cal.3d at p. 424.)  Defendant's sentence of 40 years to life
13   for a robbery committed by a violent recidivist with a long string of
    prior robberies is proportionate to the crime and the offender, and
14   does not shock the conscience or offend fundamental notions of
    human dignity.
15

16   (Opinion at 15-16.)

17           In Lockyer v. Andrade, 538 U.S. 63 (2003), the Supreme Court found that in

18   addressing an Eighth Amendment challenge to a prison sentence, the "only relevant clearly

19   established law amenable to the [AEDPA] framework is the gross disproportionality principle,

20   the precise contours of which are unclear and applicable only in the 'exceedingly rare' and

21   'extreme' case." Andrade, 538 U.S. at 73 (citing Harmelin v. Michigan, 501 U.S. 957, 1001

22   (1991); Solem v. Helm, 463 U.S. 277, 290 (1983); and Rummel v. Estelle, 445 U.S. 263, 272

23   (1980)).  The court concluded that two consecutive twenty-five years to life sentences with the

24   possibility of parole, imposed in that case under California's Three Strikes Law following two

25   felony convictions for petty theft with a prior, did not amount to cruel and unusual punishment.

26   Andrade, 538 U.S. at 77; see also Ewing v. California, 538 U.S. 11 (2003) (holding that a

60

1    sentence of twenty-five years to life imposed for felony grand theft under California's Three

2    Strikes law did not violate the Eighth Amendment).

3           Following the decision in <u>Andrade</u> the Ninth Circuit Court of Appeals has held

4    that a third strike sentence of twenty-five years to life in prison for a third shoplifting offense, a

5    "wobbler" under state law[11], constituted cruel and unusual punishment.  <u>Ramirez v. Castro</u>, 365

6    F.3d 755 (9th Cir. 2004).  In so holding, the court relied upon the limited and non-violent nature

7    of the petitioner's prior criminal history and the fact that the petitioner's only prior period of

8    incarceration had been a single one-year jail sentence.  <u>Id.</u> at 768-69.  Thereafter, in <u>Rios v.</u>

9    <u>Garcia</u>, 390 F.3d 1082 (9th Cir. 2004), the Ninth Circuit distinguished the holding in <u>Ramirez</u>,

10   finding that the petitioner in <u>Rios</u> had a "lengthy criminal history," had "been incarcerated

11   several times," and that the prior strikes used to enhance his sentence had "involved the threat of

12   violence."  <u>Id.</u> at 1086.

13          This court finds that the sentence imposed upon petitioner in this case, while

14   undeniably harsh, does not fall within the type of "exceedingly rare" circumstance that would

15   support a finding that his sentence violates the Eighth Amendment.  Petitioner was convicted of

16   robbery.  In view of the decisions noted above, the court cannot conclude that petitioner's

17   sentence is grossly disproportionate to the crime of conviction.  <u>See</u> <u>Harmelin</u>, 501 U.S. at 1004-

18   05 (life imprisonment without possibility of parole for possession of 24 ounces of cocaine raises

19   no inference of gross disproportionality).  Moreover, petitioner has an extensive criminal record,

20   which includes sixteen prior felony convictions for burglary.  Under these circumstances, the

21   state court's rejection of petitioner's Eighth Amendment claim was neither contrary to, nor an

22   unreasonable application of clearly established federal law.  Therefore, petitioner is not entitled

23   to relief on his Eighth Amendment claim.

24   /////

25   _____

26          [11] A "wobbler" is an offense that can be punished as either a misdemeanor or a felony
     under applicable law.  <u>See</u> <u>Ferreira v. Ashcroft</u>, 382 F.3d 1045, 1051 (9th Cir. 2004).

6. <u>Unconstitutional Sentencing Enhancements</u>

Petitioner asserts that the use of his 1987 and 1994 prior felony convictions to impose three five-year sentencing enhancements was unconstitutional because those enhancements "were not brought and tried separately . . . by the jury." (Sixth Am. Pet. at 234.) Moreover, petitioner argues the trial judge's decision to impose an indeterminate life sentence based on petitioner's prior convictions was an "abuse of discretion" and in violation of the holding in <u>Cunningham v. California</u>, 549 U.S. 270 (2007). (Sixth Am. Pet. at 243.)

The California Court of Appeal specifically rejected petitioner's claim that the imposition of the sentencing enhancements was improper in this case. In so holding, the court reasoned as follows:

> Before the imposition of sentence, defense counsel argued that only two of defendant's three serious felony convictions could be used for the five-year enhancement statute because two of those convictions were not "brought and tried separately." (§ 667, subd. (a).) And, citing <u>Apprendi v. New Jersey</u> (2000) 530 U.S. 466 (hereafter <u>Apprendi</u> ), counsel argued that the determination of whether the prior convictions were brought and tried separately was a question of fact that should have been submitted to the jury.
>
> Concluding the issue was a question for the court rather than the jury, the trial court found that all three prior serious felony convictions could be used for sentencing.
>
> For reasons that follow, we conclude the three five-year enhancements were properly imposed.
>
> **A**
>
> Section 667, subdivision (a), states in pertinent part: "[A]ny person convicted of a serious felony who previously has been convicted of a serious felony in this state or of any offense committed in another jurisdiction which includes all of the elements of any serious felony, shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior *conviction on charges brought and tried separately.* The terms of the present offense and each enhancement shall run consecutively." (Italics added.)
>
> At a hearing on April 29, 1987, defendant pled guilty to multiple robberies (§ 211) alleged in two separate charges that were filed at separate times following separate preliminary hearings. At a

hearing on July 10, 1987, defendant was sentenced in both cases.

Defendant argues that, as a matter of law, these convictions can serve as the basis for only one section 667, subdivision (a), enhancement because they occurred at the same hearing and, thus, were not convictions that were "brought and tried separately."  We disagree.

For charges to have been "brought and tried separately," "the underlying proceedings must have been formally distinct, from filing to adjudication of guilt."  (In re Harris (1989) 49 Cal.3d 131, 136.)  Thus, charges initiated in a single complaint are "not 'brought . . . separately,' " for purposes of section 667, subdivision (a).  (Id. at pp. 136, 137.)  In re Harris "did not decide what was meant by 'tried separately,' although it did state the rule that the underlying proceedings must have been 'formally distinct.'  (Id. at p. 136.)"  (People v. Smith (1992) 7 Cal.App.4th 1184, 1190.)

Later Court of Appeal decisions have held that criminal proceedings are "formally distinct" and, thus, "brought and tried separately," where "the defendant in two separately filed cases that were not consolidated pled guilty on the same date and was sentenced later on the same date."  (People v. Smith, supra, 7 Cal.App.4th at pp. 1190, 1191, 1193 ["separately filed cases involving separate crimes can be adjudicated on the same date under their separate case numbers and still be considered to have been both 'brought and tried separately' within the meaning of section 667"], citing People v. Thomas (1990) 219 Cal.App.3d 134, 145-147; People v. Gonzales (1990) 220 Cal.App.3d 134, 140-144; accord, People v. Wagner (1994) 21 Cal.App.4th 729, 737.)

This interpretation of legislative intent is consistent with the "practical realities of an overburdened criminal court system" (People v. Gonzales, supra, 220 Cal.App.3d at p. 140) and with "considerations of efficiency in judicial administration . . . . (People v. Smith, supra, 7 Cal.App.4th at p. 1191.)  To construe the statute otherwise would defeat the purpose of section 667, subdivision (a) (People v. Gonzales, supra, 220 Cal.App.3d at pp. 141-144), and require "hearings on separate days for each case involved so as not to effect a 'de facto' consolidation of cases." (Id. at pp. 140-141; accord, People v. Wagner, supra 21 Cal.App.4th at pp. 735, 736.)

Here, like in People v. Wagner, supra, 21 Cal.App.4th 729, the prosecution of defendant's robberies in 1987 were initiated by two separate charging documents with separate numbers, and ended with separate abstracts of judgment.  The deliberate and formal distinction between the cases was maintained, and there was no consolidation of the actions.  The fact that defendant entered into a negotiated plea on the same date for the two pending cases did not

63

transmute them into one case.  Rather, they were "brought and tried separately," for purposes of section 667, subdivision (a).  (Id. at p. 737; People v. Smith, supra, 7 Cal.App.4th at pp. 1190, 1191, 1193; People v. Gonzales, supra, 220 Cal.App.3d at pp. 140-144; People v. Thomas, supra, 219 Cal.App.3d at pp. 145-147.)

**B**

As he did in the trial court, defendant cites Apprendi, supra, 530 U.S. 466 for the proposition that the federal Constitution required the question of whether his prior convictions were brought and tried separately to be presented to the jury.  His argument fails to state what constitutional provision allegedly has been offended.  But we assume from the nature of the argument on appeal and, in the trial court, that he is invoking the Sixth Amendment's guarantee of a right to jury trial.

The contention fails because the rule of Apprendi applies only to facts akin to elements of an offense that increase the range of punishment beyond that otherwise authorized for the crime; it does not apply to the traditional sentencing factor of a prior conviction.  (Apprendi, supra, 530 U.S. at p. 490 ["Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt" (italics added)]; accord, Harris v. United States (2002) 536 U.S. 545; People v. Sengpadychith (2001) 26 Cal.4th 316, 326.)

Defendant's prior convictions are statutory sentencing factors that exposed him to greater punishment.  (People v. Epps (2001) 25 Cal.4th 19, 29.)  The fact the statute limits its application to those prior convictions that are not brought and tried separately is a sentencing factor, not an element of defendant's offense.  Hence, it is not subject to the federal Constitution's jury and proof requirements.  (See Harris v. United States, supra, 536 U.S. 545.)

(Opinion at 11-15.)

In Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the Supreme Court held as a matter of constitutional law that, other than the fact of a prior conviction, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  In Blakely v. Washington, 542 U.S. 296, 303 (2004), the Supreme Court held that the "statutory maximum for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."  There is a narrow exception to this rule, however, for

1   enhancements that are based on prior convictions which need not be submitted to the jury.  See

2   Almendarez-Torres v. United States, 523 U.S. 224, 244 (1998) ("[T]o hold that the Constitution

3   requires that recidivism be deemed an 'element' of petitioner's offense would mark an abrupt

4   departure from a longstanding tradition of treating recidivism as 'go[ing] to punishment only.'");

5   Butler v. Curry, 528 F.3d 624, 641 (9th Cir. 2008).

6           In People v. Black, 35 Cal.4th 1238 (2005) ("Black I"), the California Supreme

7   Court held that California's statutory scheme providing for the imposition of an upper term

8   sentence did not violate the constitutional principles set forth in Apprendi and Blakely.  The

9   court in Black I reasoned that the discretion afforded to a sentencing judge in choosing a lower,

10  middle or upper term rendered the upper term under California law the "statutory maximum."

11  Black I, 35 Cal.4th at 1257-61.  However, in Cunningham v. California, 549 U.S. 270 (2007), the

12  United States Supreme Court held that a California judge's imposition of an upper term sentence

13  based on facts found by the judge (other than the fact of a prior conviction) violated the

14  constitutional principles set forth in Apprendi and Blakely.  In this regard, in Cunningham the

15  United States Supreme Court expressly disapproved the holding and the reasoning of Black I,

16  finding that the middle term in California's determinate sentencing law was the relevant statutory

17  maximum for purposes of applying Blakely and Apprendi.  Cunningham, 549 U.S. at 291-94.[12]

18          In light of the decision in Cunningham, the United States Supreme Court vacated

19  Black I and remanded that case to the California Supreme Court for further consideration.  See

20  Black v. California, 549 U.S. 1190 (2007).  On remand, the California Supreme Court held that

21          so long as a defendant is eligible for the upper term by virtue of
            facts that have been established consistently with Sixth
22          Amendment principles, the federal Constitution permits the trial
            court to rely upon any number of aggravating circumstances in
23          exercising its discretion to select the appropriate term by balancing
            aggravating and mitigating circumstances, regardless of whether

24

25          [12] The Ninth Circuit subsequently held that the decision in Cunningham may be applied
    retroactively on collateral review.  Butler v. Curry, 528 F.3d 624, 639 (9th Cir. 2008).
26

1 the facts underlying those circumstances have been found to be
true by a jury.

2

3 People v. Black, 41 Cal.4th 799, 813 (2007) (Black II).  In other words, as long as one

4 aggravating circumstance has been established in a constitutional manner, a defendant's upper

5 term sentence withstands Sixth Amendment challenge.  Thereafter, relying on the decision in

6 Black II, the Ninth Circuit Court of Appeals has confirmed that, under California law, only one

7 aggravating factor is necessary to authorize an upper term sentence.  Butler v. Curry, 528 F.3d

8 624, 641-43 (9th Cir. 2008).

9 Here, petitioner concedes that the enhancements used to increase his sentence

10 were based on his prior convictions.  As indicated above, prior convictions may be used to

11 increase a sentence without submitting them to a jury for a proof beyond a reasonable doubt

12 determination.  With respect to petitioner's reliance on Cunningham, as noted by the Sacramento

13 County Superior Court in its May 14, 2007 order, petitioner received an indeterminate sentence,

14 not the upper term, and therefore Cunningham is not applicable.  (See Resp't's Lod. Doc. No. 17

15 at 1.)

16 For the reasons discussed above, the state court's rejection of this claim was

17 neither contrary to, nor an unreasonable application of clearly established federal law.

18 Accordingly, petitioner is not entitled to federal habeas relief on this aspect of his claim of

19 sentencing error.

20 7. Discriminatory Law

21 Petitioner argues that California's Three Strikes law, under which he was

22 sentenced, "is being administered in an unconstitutional manner" because the conviction rate for

23 African-Americans is much higher than for other races.  (Sixth Am. Pet. at 74-75.)  He argues

24 California's Three Strikes law is selectively enforced on African-Americans and is therefore

25 discriminatory.  (Id. at 75-77.)

26 /////

66

A selective prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution.  See United States v. Armstrong, 517 U.S. 456, 463 (1996). Although the decision whether to prosecute and what charges to bring generally rests entirely in the prosecutor's discretion, this discretion is subject to constitutional constraints, such as that it may not violate equal protection by relying on race.  Id. at 464.  In order to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present "'clear evidence to the contrary.'" Id. (citation omitted).  Unsupported allegations of selective prosecution are not enough.  See United States v. Davis, 36 F.3d 1424, 1433 (9th Cir. 1994), cert. denied, 513 U.S. 1171 (1995); see also United States v. Buffington, 815 F.2d 1292, 1305 (9th Cir. 1987) (speculation of selectivity by a defendant previously acquitted of an officer's murder, without additional proof, insufficient to establish selective prosecution).

To establish a prima facie case of selective prosecution, the claimant must show that the prosecutorial policy: (1) had a discriminatory effect and (2) was motivated by a discriminatory purpose.  See Armstrong, 517 U.S. at 465.  "To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted."  Id.

Here, petitioner has not presented any evidence showing that similarly situated individuals of a different race were not prosecuted for crimes eligible for treatment under California's Three Strikes law.   His unsupported allegations of selective prosecution are clearly not a sufficient basis for the granting of relief.  Accordingly petitioner is not entitled to federal habeas relief on this aspect of his claim of sentencing error.

I.  Juror Misconduct

Petitioner next argues that during jury selection a prospective juror failed to disclose prior experience as a peace officer on a juror questionnaire.  (Sixth Am. Pet. at 103.) Petitioner claims that had the juror disclosed this information the trial court would have

dismissed the juror for cause, but instead petitioner was forced to use a peremptory challenge to excuse the juror.  (Id. at 103-04.)  Petitioner also claims that the entire jury engaged in misconduct during their deliberations by submitting a question to the trial judge asking "where is the money?"  (Id. at 107.)

A prospective juror must be removed for cause if the juror's views or beliefs would prevent or substantially impair the performance of his or her duties as a juror.  Wainwright v. Witt, 469 U.S. 412, 424 (1985).  "Even if only one juror is unduly biased or prejudiced, the defendant is denied his constitutional right to an impartial jury."  Tinsley v. Borg, 895 F.2d 520, 523-34 (9th Cir. 1990) (internal quotations omitted).

Again, because petitioner did not raise this claim on direct appeal, the transcript of the voir dire proceedings is not part of the state court record that has been presented by the parties to this court.  However, even assuming arguendo that petitioner's allegations are true, the juror at issue did not end up serving on petitioner's jury.  Moreover, petitioner cannot obtain relief based on the loss of a peremptory challenge because, as the Supreme Court has recently reaffirmed, there is no constitutional right to peremptory challenges or any specific number of them.  Rivera v. Illinois, ___ U.S.___ , ___, 129 S. Ct. 1446, 1450 (2009); see also United States v. Martinez-Salazar, 528 U.S. 304, 311 (2000) ("[P]eremptory challenges are not of federal constitutional dimension.");  Ross v. Oklahoma, 487 U.S. 81, 88, 90-91 (1988).  Therefore, the only issue before this court is whether petitioner has shown that a biased juror was seated as a result of his having to use a peremptory on a prospective juror who should have been stricken for cause.  In this regard, petitioner has failed to allege or prove that any of the jurors who were seated at his trial were biased.

With respect to petitioner's claim that the jury engaged in misconduct by submitting a question to the trial judge during deliberations inquiring about the money evidence, petitioner has cited no authority in support of his allegation that this somehow constituted juror misconduct.  Such a claim is meritless and frivolous on its face.

1    Accordingly, for the reasons stated above, petitioner is not entitled to federal

2 habeas relief with respect to his claim of juror misconduct.

3    J.  <u>Prosecutorial Misconduct/Brady Violations</u>

4    Petitioner again claims that the prosecution failed to disclose to the defense the

5 true identities of witnesses Rick Dobbs and Rahman Aliy, who petitioner claims were actually

6 Ricky Leach and Dante Pigg, and who had each suffered prior felony convictions.  (Sixth Am.

7 Pet. at 64-70.)  He also again complains that witness Rob Hensley had an outstanding warrant for

8 his arrest when he testified against petitioner at trial.  (<u>Id.</u>)  Petitioner argues that the failure to

9 disclose this information to the defense constituted both prosecutorial misconduct and a <u>Brady</u>

10 violation.  (<u>Id.</u>)

11    Petitioner further argues that the prosecutor in his case engaged in misconduct by

12 failing to produce all police reports and records, by referring to petitioner as homeless, by

13 presenting the "erroneous theory" that petitioner changed his clothes between the time of his

14 detention and the taking of his booking photo, by allowing a witness to refer to petitioner's "prior

15 booking information," and by knowingly using the "perjured" testimony of Aliy, Dobbs and

16 Hensley at trial.  (<u>Id.</u> at 108-19.)

17    A defendant's due process rights are violated when a prosecutor's misconduct

18 renders a trial fundamentally unfair.  <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986).

19 However, such misconduct does not, per se, violate a petitioner's constitutional rights.  <u>Jeffries v.</u>

20 <u>Blodgett</u>, 5 F.3d 1180, 1191 (9th Cir. 1993) (citing <u>Darden</u>, 477 U.S. at 181 and <u>Campbell v.</u>

21 <u>Kincheloe</u>, 829 F.2d 1453, 1457 (9th Cir. 1987)).  Rather, claims of prosecutorial misconduct are

22 reviewed "on the merits, examining the entire proceedings to determine whether the prosecutor's

23 [actions] so infected the trial with unfairness as to make the resulting conviction a denial of due

24 process." <u>Johnson v. Sublett</u>, 63 F.3d 926, 929 (9th Cir. 1995).  <u>See also</u> <u>Greer v. Miller</u>, 483

25 U.S. 756, 765 (1987); <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974); <u>Turner v. Calderon</u>,

26 281 F.3d 851, 868 (9th Cir. 2002).  Habeas relief is limited to cases in which the petitioner can

1    establish that prosecutorial misconduct resulted in actual prejudice to the defense.  Johnson, 63

2    F.3d at 930 (citing Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993)); see also Darden, 477

3    U.S. at 181-83; Turner, 281 F.3d at 868.  Put another way, prosecutorial misconduct violates due

4    process when it has a substantial and injurious effect or influence in determining the jury's

5    verdict.  See Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996).

6          The Supreme Court has held "that the suppression by the prosecution of evidence

7    favorable to an accused upon request violates due process where the evidence is material either to

8    guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  Brady v.

9    Maryland, 373 U.S. 83, 87 (1963).  See also Bailey v. Rae, 339 F.3d 1107, 1113 (9th Cir. 2003).

10   The duty to disclose such evidence is applicable even though there has been no request by the

11   accused, United States v. Agurs, 427 U.S. 97, 107 (1976), and encompasses impeachment

12   evidence as well as exculpatory evidence.  United States v. Bagley, 473 U.S. 667, 676 (1985).  A

13   Brady violation may also occur when the government fails to turn over evidence that is "known

14   only to police investigators and not to the prosecutor."  Youngblood v. West Virginia, 547 U.S.

15   867, 870 (2006) (quoting Kyles v. Whitley, 514 U.S. 419, 438 (1995)).[13]  There are three

16   components of a Brady violation: "[t]he evidence at issue must be favorable to the accused,

17   either because it is exculpatory, or because it is impeaching; the evidence must have been

18   suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."

19   Strickler v. Greene, 527 U.S. 263, 281-82 (1999).  See also Banks v. Dretke, 540 U.S. 668, 691

20   (2004); Silva v. Brown, 416 F.3d 980, 985 (9th Cir. 2005).

21          In order to establish prejudice, a petitioner must demonstrate that "'there is a

22   reasonable probability' that the result of the trial would have been different if the suppressed

23   documents had been disclosed to the defense."  Strickler, 527 U.S. at 289.  "The question is not

24

25   _____

26          [13] "[T]he individual prosecutor has a duty to learn of any favorable evidence known to the
others acting on the government's behalf in the case, including the police."  Kyles, 514 U.S. at 437.

1   whether petitioner would more likely than not have received a different verdict with the

2   evidence, but whether "in its absence he received a fair trial, understood as a trial resulting in a

3   verdict worthy of confidence."  (Id.) (quoting Kyles, 514 U.S. at 434).  See also Silva, 416 F.3d

4   at 986 ("a Brady violation is established where 'the favorable evidence could reasonably be taken

5   to put the whole case in such a different light as to undermine confidence in the verdict.'")  Once

6   the materiality of the suppressed evidence is established, no further harmless error analysis is

7   required.  Kyles, 514 U.S. at 435-36; Silva, 416 F.3d at 986.  "When the government has

8   suppressed material evidence favorable to the defendant, the conviction must be set aside."

9   Silva, 416 F.3d at 986.

10          It is also clearly established that "a conviction obtained by the knowing use of

11   perjured testimony must be set aside if there is any reasonable likelihood that the false testimony

12   could have affected the jury's verdict."  Bagley, 473 U.S. at 680 n. 9.  See also Hayes v. Brown,

13   399 F.3d 972, 978 (9th Cir. 2005) ("One of the bedrock principles of our democracy, 'implicit in

14   any concept of ordered liberty,' is that the State may not use false evidence to obtain a criminal

15   conviction.") (quoting Napue v. Illinois, 360 U.S. 264, 269 (1959)); Morales v. Woodford, 388

16   F.3d 1159, 1179 (9th Cir. 2004) ("The due process requirement voids a conviction where the

17   false evidence is 'known to be such by representatives of the State.'") (quoting Napue, 360 U.S.

18   at 269)).  This rule applies even where the false testimony goes only to the credibility of the

19   witness.  Napue, 360 U.S. at 269; Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002).

20   There are two components to establishing a claim for relief based on the prosecutor's

21   introduction of perjured testimony at trial.  First, the petitioner must establish that the testimony

22   was false.  United States v. Polizzi, 801 F.2d 1543, 1549-50 (9th Cir. 1986).  Second, the

23   petitioner must demonstrate that the prosecution knowingly used the perjured testimony.  Id.

24   Mere speculation regarding these factors is insufficient to meet petitioner's burden.  United

25   States v. Aichele, 941 F.2d 761, 766 (9th Cir. 1991).

26   /////

1          Here, petitioner's claim with respect to the failure to disclose witness Hensley's

2   outstanding warrant is entirely without merit because, as the Sacramento County Superior Court

3   held, the warrant was for a failure to appear on an infraction and could not have been used to

4   impeach Hensley's credibility.  (Resp't's Lod. Doc No. 14 at 5; Petitioner's Exhibits (Doc. No.

5   84) at 92.)  The Superior Court also found petitioner had provided "no documentation to

6   support" his claim that Rick Dobbs and Rahman Aliy, were actually Ricky Leach and Dante

7   Pigg.  (Resp't's Lod. Doc No. 14 at 5.)  Petitioner has provided no additional support for that

8   bare allegation here.[14]  As a result, petitioner's claim fails because his arguments in support

9   thereof are repeatedly centered around the assumption that Aliy, Dobbs, and Hensley were

10   subject to substantial impeachment based on prior convictions and an outstanding warrant and

11   that the prosecutor withheld that information.  However, petitioner has not provided any evidence

12   proving that his assumptions in this regard are correct.

13          Nevertheless, assuming arguendo that petitioner had presented evidence in

14   support of every challenge he raises within this claim, he could still not establish prejudice

15   flowing therefrom.  Petitioner has not demonstrate that there is a reasonable probability that the

16   result of his trial would have been different even if his allegations of prosecutorial misconduct

17   were to be credited.  That is the case because none of petitioner's allegations raised within this

18   claim would have prevented O'Sullivan from testifying at trial that he was certain that petitioner

19   was the person who robbed the store.  Nor would they impact the evidence establishing that

20   petitioner was detained soon after the robbery, only a short distance from the scene of the crime

21   and that the exact amount of money stolen was recovered from petitioner's sock and in a small

22   brown paper bag nearby.

23

24          [14]  Petitioner did file a motion asking that judicial notice be taken of some two hundred
25   pages of documents, some of which he asserted related to this claim.  (Doc. No. 84.)  That
    motion was denied because petitioner failed to provide any legal basis for the taking of judicial
26   notice of the submitted documents.  (Doc. No. 96.)  Accordingly, those documents have been
    disregarded by this court.

1    Accordingly, for the reasons stated above, petitioner is not entitled to federal

2    habeas relief with respect to this prosecutorial misconduct/Brady claim.

3    K.  Verdict is Contrary to The Evidence

4    Petitioner notes that the jury sent out a note during deliberations asking the trial

5    judge "where is the money?" and that the judge answered, "there is no money."  (Sixth Am. Pet.

6    at 148.)  Petitioner argues in conclusory fashion that "[s]ince there was not alleged stolen money

7    that the trial judge makes mention of, then there was no money stolen, and the guilty verdict is

8    contrary to the evidence."  (Id. at 148.)

9    Due Process Clause of the Fourteenth Amendment "protects the accused against

10   conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the

11   crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  There is sufficient

12   evidence to support a conviction if, "after viewing the evidence in the light most favorable to the

13   prosecution, any rational trier of fact could have found the essential elements of the crime beyond

14   a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  "[T]he dispositive question

15   under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond

16   a reasonable doubt.'"  Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson,

17   443 U.S. at 318).  "A petitioner for a federal writ of habeas corpus faces a heavy burden when

18   challenging the sufficiency of the evidence used to obtain a state conviction on federal due

19   process grounds."  Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).  In order to grant the

20   writ, the federal habeas court must find that the decision of the state court reflected an objectively

21   unreasonable application of Jackson and Winship to the facts of the case.  Id. at 1275 & n. 13.

22   The court must review the entire record when the sufficiency of the evidence is

23   challenged in habeas proceedings.  Adamson v. Ricketts, 758 F.2d 441, 448 n. 11 (9th Cir. 1985),

24   vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987).  It is

25   the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw

26   reasonable inferences from basic facts to ultimate facts."  Jackson, 443 U.S. at 319.  If the trier of

73

1   fact could draw conflicting inferences from the evidence, the court in its review will assign the

2   inference that favors conviction.  McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994).

3   "Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction."

4   United States v. Cordova Barajas, 360 F.3d 1037, 1041 (9th Cir. 2004) (internal quotation marks,

5   brackets and citation omitted).  In addition, "the assessment of the credibility of witnesses is

6   generally beyond the scope of review."  Schlup v. Delo, 513 U.S. 298, 330 (1995).  See also

7   Sarausad, 479 F.3d at 678 ("A jury's credibility determinations are entitled to near-total

8   deference [.]") (internal quotation marks and citation omitted).

9           The relevant inquiry is not whether the evidence excludes every hypothesis except

10  guilt, but whether the jury could reasonably arrive at its verdict.  United States v. Mares, 940

11  F.2d 455, 458 (9th Cir. 1991).  Thus, "[t]he question is not whether we are personally convinced

12  beyond a reasonable doubt" but rather "whether rational jurors could reach the conclusion that

13  these jurors reached."  Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).  The federal habeas

14  court determines sufficiency of the evidence in reference to the substantive elements of the

15  criminal offense as defined by state law.  Jackson, 443 U.S. at 324 n. 16; Chein, 373 F.3d at 983.

16          Pursuant to California law,

17          Robbery is the felonious taking of personal property in the
            possession of another, from his person or immediate presence, and
18          against his will, accomplished by means of force or fear.

19  (Cal. Penal Code § 211.)

20          Here, viewing the evidence in the light most favorable to the verdict, the

21  undersigned concludes that there was sufficient evidence introduced at petitioner's trial from

22  which a rational trier of fact could have found beyond a reasonable doubt that petitioner took the

23  personal property, in possession of another, from that person, against the person's will by force

24  or fear.  O'Sullivan testified that petitioner demanded the money, brandished a pipe and

25  threatened to hurt people.  (RT at 146-49.)  O'Sullivan initially refused to turn over the money

26  but relented as a result of petitioner's threat.  (RT at 149-50.)  Petitioner was thereafter chased

74

1  from the store and captured a short time later in possession of the exact amount of stolen money.

2          Moreover, it is clear that petitioner's reading of the trial judge's answer to the

3  jury's inquiry is erroneous.  It appears clear that the trial judge was simply informing the jury that

4  the stolen money was not physically retained in evidence and was not available for the jury's

5  review.  To the extent petitioner's claim is based on the faulty assertion that the trial judge was

6  indicating that there was no evidence before the jury that any money was stolen, the claim is

7  frivolous.

8          Accordingly, petitioner is not entitled to federal habeas relief with respect to this

9  claim.

10         L.  Conspiracy

11         Petitioner argue that he was the victim of a "conspiracy to prevent the filing of [a]

12  motion to strike [a] prior conviction before trial."  (Sixth Am. Pet. at 180.)  Specifically

13  petitioner states as follows:

14         The prosecutor purposely failed to include Penal Code section
           statute 667.(a) (sic) for prior convictions within the information
15         filed so that the defense counsel does not file a motion to dismiss
           or strike prior convictions due to the prosecutor's purposely filed
16         deficient information.  (See exhibit 86).  Due to the prosecutor
           filing an information deficient in the charging of a prior conviction
17         or convictions, the trial defense counsel then fails to demur in
           order to keep the information deficient, and this failure to demur
18         prevent the trial defense counsel from filing a motion to strike prior
           convictions before the trial begins, therefor, causing the defendant
19         to proceed to trial with the deficient strike allegations against him.
           The prosecutor then files an amended information at the start of the
20         trial in order not to give the defendant time to demure or file a
           motion to strike prior convictions before the trial.  (See ex. 87).

21

22  (Id.)

23         Petitioner's claim in this regard is vague and conclusory and relief should be

24  denied on that basis alone.  See Jones, 66 F.3d at 204 ("'[c]onclusory allegations which are not

25  supported by a statement of specific facts do not warrant habeas relief'") (quoting James v. Borg,

26  24 F.3d 20, 26 (9th Cir. 1994)).  Although it appears that petitioner may be arguing that the

1  prosecutor and his trial counsel somehow "purposely" acted or failed to act in order to allow the

2  use of petitioner's "prior conviction or convictions" against him, petitioner's argument is

3  otherwise unclear, vague and conclusory.  Petitioner has failed to show that the information by

4  which he was charged was in any way "deficient" or that his counsel was ineffective in failing to

5  "demur" or "file a motion to strike."  Moreover, petitioner has utterly failed to demonstrate there

6  was any "conspiracy" somehow aimed against him.

7          Accordingly, petitioner is not entitled to federal habeas relief on this claim.

8      M.  Motion to Substitute Appellate Counsel

9          Petitioner claims that his appointed counsel on appeal indicated that he would

10  "not be able to work full time on [petitioner's] appeal." (Sixth Am. Pet. at 187.)  Petitioner

11  claims that based on this representation, petitioner moved for substitute counsel but the motion

12  was denied.  (Id.)  Petitioner claims that the state appellate court's decision denying his request

13  was an "abuse of its discretion" and that his appellate counsel was notified, by petitioner, of over

14  thirty claims, but raised only nine, causing him prejudice.  (Id.)

15          The grant or denial of a motion to substitute counsel may depend on its timeliness

16  and the nature of the conflict between the defendant and current counsel.  United States v. Musa,

17  220 F.3d 1096, 1102 (9th Cir. 2000).  Here, the only conflict petitioner alleges is that his

18  appointed counsel could not work on petitioner's appeal "full time."  That circumstance, alone, is

19  not unusual nor does it suggest any deficient or ineffective representation on appeal.

20          Petitioner alleges that his appellate counsel also failed to raise twenty-one of the

21  thirty claims of which petitioner "notified" counsel.  As noted above, the Strickland standards

22  apply to appellate as well as trial counsel.  Murray, 477 U.S. at 535-36; Miller, 882 F.2d at 1433.

23  However, an indigent defendant "does not have a constitutional right to compel appointed

24  counsel to press nonfrivolous points requested by the client, if counsel, as a matter of

25  professional judgment, decides not to present those points."  Barnes, 463 U.S. at 751.  There is,

26  of course, no obligation to raise meritless arguments on a client's behalf.  See Strickland, 466

76

1    U.S. at 687-88 (requiring a showing of deficient performance as well as prejudice).  In this

2    regard, petitioner has not even specified which issues his appellate counsel failed to raise, let

3    alone proven those arguments to have been meritorious.  Therefore petitioner has fallen far short

4    of establishing any prejudice resulting from the state appellate court's decision to deny his

5    request for the substitution of counsel.

6            For the reasons stated above, petitioner is not entitled to federal habeas relief on

7    this claim.

8        N.  Cumulative Error

9            Petitioner asserts that his conviction "should be reversed due to the abundant[]

10   and excessive multiple upon multiple errors" that occurred during his trial.  (Sixth Am. Pet. at

11   170.)

12           The Ninth Circuit has concluded that under clearly established federal law, the

13   combined effect of multiple trial errors may give rise to a due process violation if they render a

14   trial fundamentally unfair, even where each error considered individually would not require

15   reversal.  Parle v. Runnels, 505 F.3d 922, 927 (9th. Cir. 2007) (citing Donnelly v. DeChristoforo,

16   416 U.S. 637, 643 (1974) and Chambers v. Mississippi, 410 U.S. 284, 290 (1973)).  "The

17   fundamental question in determining whether the combined effect of trial errors violated a

18   defendant's due process rights is whether the errors rendered the criminal defense 'far less

19   persuasive,' Chambers, 410 U.S. at 294, and thereby had a 'substantial and injurious effect or

20   influence' on the jury's verdict." Parle, 505 F.3d at 927 (quoting Brecht v. Abrahamson, 507 U.S.

21   619, 637 (1993)).  See also Hein v. Sullivan, 601 F.3d 897, 917 (9th Cir. 2010) (same).

22           This court has addressed each of petitioner's numerous claims and has concluded

23   that no error of constitutional magnitude occurred in connection with his trial, sentencing and

24   appeal therefrom.  The court also concludes that all the alleged errors raised by petitioner, even

25   when considered in combination, did not render petitioner's defense "far less persuasive," nor did

26   they have a "substantial and injurious effect or influence on the jury's verdict."  Parle, 505 F.3d

at 927.  Accordingly, petitioner is not entitled to federal habeas relief with respect to his

cumulative error claim.

O. _Evidentiary Hearing_

On April 26, 2010, petitioner requested an evidentiary hearing on his claims.

(Doc. No. 146.)  Pursuant to 28 U.S.C. § 2254(e)(2), an evidentiary hearing is appropriate under

the following circumstances:

> (e)(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>
> (A) the claim relies on-
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense[.]

Under this statutory scheme, a district court presented with a request for an

evidentiary hearing must first determine whether a factual basis exists in the record to support a

petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate."  _Baja v.

Ducharme_, 187 F.3d 1075, 1078 (9th Cir. 1999).  _See also_ _Earp v. Ornoski_, 431 F.3d 1158, 1166

(9th Cir. 2005); _Insyxiengmay v. Morgan_, 403 F.3d 657, 669-70 (9th Cir. 2005).  A petitioner

requesting an evidentiary hearing must also demonstrate that he has presented a "colorable claim

for relief."  _Earp_, 431 F.3d at 1167 (citing _Insyxiengmay_, 403 F.3d at 670, _Stankewitz v.

Woodford_, 365 F.3d 706, 708 (9th Cir. 2004) and _Phillips v. Woodford_, 267 F.3d 966, 973 (9th

Cir. 2001)).  To show that a claim is "colorable," a petitioner is "required to allege specific facts

which, if true, would entitle him to relief."  _Ortiz v. Stewart_, 149 F.3d 923, 934 (9th Cir. 1998)

78

1   (internal quotation marks and citation omitted).

2           The undersigned concludes that no additional factual supplementation is necessary

3   in this case and that an evidentiary hearing is not appropriate with respect to the claims raised by

4   petitioner.  The facts alleged in support of these claims, even if established at a hearing, would

5   not entitle petitioner to federal habeas relief.  Therefore, petitioner's request for an evidentiary

6   hearing should be denied.

7       P.  Appointment of Counsel

8           On April 26, 2010, petitioner filed a motion for the appointment of counsel.

9   (Doc. No. 147.)  The motion will be denied as the court does not find that the interests of justice

10  would be served by the appointment of counsel.

11      Q.  Discovery

12          On April 26, 2010, petitioner filed a motion seeking leave of court  to conduct

13  discovery.  (Doc. No. 148.)

14          Parties in a habeas proceeding are not entitled to discovery as a matter of course.

15  Bracy v. Gramley, 520 U.S. 899, 904 (1997); Bittaker v. Woodford, 331 F.3d 715, 728 (9th Cir.),

16  cert. denied, 540 U.S. 1013 (2003).  Rather, "[a] party shall be entitled to invoke the processes of

17  discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the

18  judge in the exercise of his [or her] discretion and for good cause shown grants leave to do so,

19  but not otherwise."  Rule 6(a), Rules Governing § 2254 Cases.  See also Bracy, 520 U.S. at 904.

20  Good cause is shown "where specific allegations before the court show reason to believe that the

21  petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to

22  relief."  Bracy, 520 U.S. at 908-09 (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)).  See

23  also Pham v. Terhune, 400 F.3d 740, 743 (9th Cir. 2004).  In order to obtain discovery a

24  petitioner need not demonstrate that he will prevail on the claim underlying the discovery

25  request.  See Bracy, 520 U.S. at 909; Pham, 400 F.3d at 743.  A request for discovery "must also

26  include any proposed interrogatories and requests for admission, and must specify any requested

documents." Rule 6(b), Rules Governing § 2254 Cases. Finally, federal courts have "the power to 'fashion appropriate modes of procedure,' including discovery, to dispose of habeas petitions 'as law and justice require[.]'" Bracy, 520 U.S. at 904 (citations omitted) (quoting Harris, 394 U.S. at 299-300). See also Bittaker, 331 F.3d at 728.

Having reviewed petitioner's claims, the court does not find good cause to grant him leave to conduct further discovery in connection with this action since petitioner cannot prevail on his claims for the reasons set forth above.

CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's April 26, 2010, motion for an evidentiary hearing (Doc. No. 146) is denied;

2. Petitioner's April 26, 2010, motion for the appointment of counsel (Doc. No. 147) is denied;

3. Petitioner's April 26, 2010, motion for leave to conduct discovery (Doc. No. 148) is denied; and

IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus (Doc. No. 83) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). In any objections he elects to file petitioner may address whether a certificate of

1   appealability should issue in the event he elects to file an appeal from the judgment in this case.

2   See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a

3   certificate of appealability when it enters a final order adverse to the applicant).

4   DATED: June 23, 2010.

5

6   _____

7   DALE A. DROZD
    UNITED STATES MAGISTRATE JUDGE

8   DAD:6
    moore7.hc

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26